LAKE SHORE NATIONAL BANK, Plaintiff-Appellant, *v.* EZRA L. McCANN, Defendant-Appellee.

First District (2nd Division)   No. 78-1461

Opinion filed November 13, 1979.

Olson and Hanelin, of Chicago (J. W. Olson, of counsel), for appellant.

Paul Beard, of Legal Aid Bureau, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Lake Shore National Bank, obtained a judgment by confession on a note and security agreement against defendant, Ezra L. McCann, in the amount of a deficiency balance after a sale of collateral. On proceedings to confirm the judgment, defendant filed an answer and a counterclaim alleging violations of Article 9 of the Uniform Commercial Code as adopted in Illinois (Ill. Rev. Stat. 1973, ch. 26, par. 9—101 *et seq.*) and of the Federal Truth in Lending Act (15 U.S.C. par. 1601 *et seq.*

(1970)) and Regulation Z[1] (12 C.F.R. par. 226.1 *et seq.* (1973)). Pursuant to a motion for summary judgment filed by defendant, the circuit court vacated the judgment by confession against defendant and entered summary judgment against plaintiff on the counterclaim. Plaintiff appeals presenting the following issues for review: (1) whether the notice of sale of collateral sent by plaintiff failed to comply with section 9—504 of the Illinois Uniform Commercial Code; (2) if the notice was defective, whether plaintiff was barred from recovering a deficiency judgment; (3) whether the note and security agreement complied with the disclosure requirements of the Federal Truth in Lending Act and Regulation Z; and (4) whether defendant's claim of violations of the Truth in Lending Act is barred by the statute of limitations.

We reverse and remand.

On December 2, 1974, defendant executed a note and security agreement in the principal amount of $1913.04 plus a finance charge of $284.77. The total amount of $2197.81 was payable to plaintiff in 29 monthly installments of $74 and a final installment of $51.81. Under the terms of the agreement, plaintiff retained a security interest in a 1973 used Volkswagen. After defendant defaulted in making payments, plaintiff repossessed the Volkswagen, and on June 16, 1975, plaintiff sent notice to defendant that a sale of the automobile would be held at 605 North Michigan Avenue, Chicago, Illinois, on July 1, 1975, at 9 a.m.

On December 15, 1975, plaintiff filed a complaint for a confession of judgment against defendant in the amount of the principal due under the note and security agreement ($2143.91) less the proceeds from the sale of the automobile ($900) and less the rebate of unearned interest ($169.01) and plus attorney's fees ($136.24), or a total of $1211.14. Attached to the complaint was a copy of the note and security agreement executed by defendant. The agreement contained a confession of judgment clause.

On January 8, 1976, the court entered a confession of judgment in the amount of $1211.14 against defendant and a summons to confirm the judgment was issued to defendant.

On November 16, 1977, some 22 months later,[2] defendant filed an answer and a counterclaim alleging that the note and security agreement was governed by the Illinois Consumer Installment Loan Act (Ill. Rev. Stat. 1973, ch. 74, par. 51 *et seq.*), the United States Consumer Protection Act (Truth in Lending Act) and Regulation Z. Defendant further alleged that the security agreement violated the acts by (1) failing to list the address of the obligor; (2) failing to list the default and delinquency

---

[1] The Board of Governors of the Federal Reserve System is directed to prescribe regulations to carry out and implement the purposes of the Truth in Lending Act (15 U.S.C. §1604, and in carrying out the directive the Board has promulgated Regulation Z.

[2] We note the lapse of time between the judgment by confession and the filing of an answer; however, there is nothing in the record to explain the delay.

disclosures together on one side of the instrument; and (3) failing to disclose a description of the type of security interest held by plaintiff. Defendant requested recovery of double the amount of the finance charge ($569.54), which constitutes the damages recoverable under section 1640 of the Truth in Lending Act for violations of the disclosure requirements. (15 U.S.C. § 1640 (1970).) On December 21, 1977, defendant filed an amendment to his answer and counterclaim alleging further that the note and security agreement did not clearly disclose the finance charge.

On March 1, 1978, defendant filed a motion for summary judgment stating substantially the same allegations as those stated in defendant's answer and counterclaim. In addition defendant alleged that the notice of sale sent by plaintiff did not comply with section 9—504 of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 9—504) in that the notice did not disclose whether the sale would be public or private, and that since the notice was inadequate plaintiff's claim for the deficiency was unenforceable.

On April 19, 1978, the trial court found (1) that the notice sent by plaintiff did not comply with section 9—504 of the Illinois Commercial Code and therefore plaintiff was not entitled to recover any deficiency; and (2) that plaintiff failed to disclose in the security agreement the default and delinquency charges as required by the Federal Truth in Lending Act and Regulation Z and therefore defendant was entitled to recover from plaintiff as a penalty double the amount of the finance charge. The court vacated the judgment by confession, dismissed plaintiff's complaint and granted defendant's motion for summary judgment against plaintiff in the amount of $569.54 plus costs. A motion to reconsider filed by plaintiff was denied.

Plaintiff initially contends that its failure to specify in the notice of sale whether the sale was to be public or private was not such a failure to comply with the notification provisions of section 9—504 as to bar plaintiff from recovering a deficiency judgment.

■■ Section 9—504 of the Illinois Uniform Commercial Code provides in pertinent part:

> "(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time*

*after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 26, par. 9—504.)

The established rule in Illinois is that the creditor bears the burden of proving compliance with the notice provisions of section 9—504 before recovering a deficiency judgment. (*National Republic Bank v. Proctor* (1978), 66 Ill. App. 3d 534, 383 N.E.2d 1310; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573; *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180.) If notice is not sent to the debtor or is defective, section 9—507(1) provides that the debtor has a right to recover from the secured party any loss caused by a failure to comply with the notice provisions. (Ill. Rev. Stat. 1973, ch. 26, par. 9—507(1).) Loss may be determined to be the difference between what the automobile actually sold for and the price it would have brought had defendant been given notice, attended the sale and purchased the car for the amount still due on the contract. (*Tauber* 8 Ill. App. 3d 789, 794.) Generally, Illinois follows the rule that the failure to provide adequate notice does not necessarily bar a deficiency judgment, but rather such failure raises a presumption that the value of the secured collateral was equivalent to the amount of the debt. The creditor then has the burden of rebutting the presumption and of proving that the amount actually collected at the sale was commercially reasonable.[3] *National Republic Bank*; *General Foods Corp.*; *Tauber*.

In the case at bar the notice to defendant read as follows:[4]

> "You will take notice that, as agent for the Lake Shore National Bank, I have this day foreclosed the Security Agreement Contract heretofore given by you, dated December 3, 1974 on the property in the premises known as one (1), 1973 Volkswagon Conv. Serial #153 2275 640 and that the sale under said Security Contract Agreement will be held at 605 N. Michigan Avenue in the City of Chicago, Illinois on the 1st day of July, 1975 at 9:00 A.M."

The notice did not specify whether the sale was to be public or private. However, the form of the notice indicates that a public sale was to be held since the notice specified a particular time and place as required by section 9—504. In fact, there is nothing in section 9—504 which requires

---

[3] It should be noted that there is a recent appellate court decision in which the court held that a failure of the secured party to give notice of the sale of collateral absolutely bars any deficiency judgment. The court reasoned that the deprivation of the ability to be present at the sale and to guard one's interest is serious and allows the secured party too free a hand in making a disposition. *Stensel v. Stensel* (1978), 63 Ill. App. 3d 639, 380 N.E.2d 526.

[4] It is not disputed that defendant received the notice or that the sale was conducted in accordance with the notice.

the secured creditor to specify whether the sale is to be public or private, but rather the section provides different information to be set forth in the notice depending on whether the sale is to be public or private. Further we have found no cases which have interpreted section 9—504 as requiring such specification. In *In re Webb* (S.D. Ohio 1975), 17 U.C.C. Rep. Serv. 627, the court construed as a notice of public sale a notice that was substantially the same as the notice in the case at bar in that it stated a sale of collateral would be held at a specified place at a specified time. The purpose of the notice provision of section 9—504 is to enable the debtor to protect his interest in the secured property by paying the debt, finding a buyer or being present at the sale to bid on the property. (Anderson, Uniform Commercial Code, Secured Transactions §9—504:18, at 618 (1971).) The notice in the case at bar provided defendant with sufficient information to allow defendant to protect his interests. Defendant could have paid the debt before the date of the sale or could have attended the sale since he had knowledge of the time and place approximately two weeks prior to the anticipated sale. Since the notice specified the place, date and time of the sale, it complied with the requirements of section 9—504 for reasonable notification of a public sale of collateral. Since the notice of sale was not defective and was in compliance with section 9—504, defendant was liable to plaintiff for any deficiency under section 9—504(2). Thus, the trial court erred in vacating the judgment by confession in the amount of the deficiency and in granting summary judgment for defendant on this issue.

Plaintiff next contends that the trial court erred in ruling that plaintiff violated the disclosure requirements of the Federal Truth in Lending Act[5] (hereinafter referred to as the Act) and Regulation Z by failing to disclose the default and delinquency charges together on the front side of the instrument. More specifically, defendant contended, and the trial court found, that plaintiff failed to disclose the right to accelerate payments upon default and the creditor's rebate policy with respect to acceleration of payments as part of the default and delinquency charges.[6] Plaintiff contends on appeal that the Act does not require either disclosure of the

---

[5] This court has jurisdiction to enforce the Federal Truth in Lending Act under section 1640(e) of the Act. That section provides that any action under 1640 may be brought in any United States District Court, or in any other court of competent jurisdiction. The Federal Reserve Board has construed section 1640(e) to mean that any State court which is competent under the applicable State law could try such a case. See *Vickers v. Home Federal Savings & Loan Association* (1977), 56 App. Div. 2d 62, 390 N.Y.S.2d 747.

[6] The right to accelerate payments allows the creditor to require immediate payment of all installments upon a default by the debtor. However, the accelerated debt obligation will include (unless rebated) an unearned finance charge. This is due to the fact that the finance charge on the stated debt was computed on the basis of the full credit period until maturity and upon exercise of the right to accelerate the credit period has been shortened. The right to accelerate payments, which is a creditor's right, should be distinguished from the right of the debtor to pay the debt prior to the maturity date (the right of voluntary prepayment).

right to accelerate payments upon default or the creditor's rebate policy with respect thereto and that in any event the right of acceleration upon default was disclosed on both the front and back sides of the instrument. Defendant contends on appeal that plaintiff violated the Act because the rebate policy was not disclosed together with the right of acceleration in a meaningful sequence on the front side of the security agreement.

■ Section 1638 of the Truth in Lending Act sets forth certain specific items and terms which the creditor must disclose. Section 1638(a)(9) requires disclosure of the "default, delinquency, or similar charges payable in the event of late payments." Regulation Z (12 C.F.R. par. 226.8(b)(4)) provides that such disclosure shall state "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." Several courts have held that the right to accelerate payments upon default is not a "default, delinquency, or similar charge" under the Act and Regulation Z, but rather the right to accelerate is simply an additional contractual remedy which the creditor may, but need not, utilize in the event of default. (See *McDaniel v. Fulton National Bank* (5th Cir. 1978), 571 F.2d 948; *Griffith v. Superior Ford* (8th Cir. 1978), 577 F.2d 455; *Tarplain v. Baker Ford, Inc.* (D.R.I. 1979), 466 F. Supp. 1340.) The court in *Griffith* reasoned that the Act and Regulation Z list only those specific credit terms which Congress and the Federal Reserve Board deemed essential to the informed use of credit and that there is no provision in the Act which delegates to the courts any authority to enlarge upon the list of disclosure requirements set forth simply because in the court's judgment such additional information may be deemed desirable. (577 F.2d 455, 458.) Further, the Federal Reserve Board's Official Staff Interpretation of the Act and Regulation Z, which is persuasive authority, expressed the view that the mere right to accelerate payments upon default did not constitute a "default, delinquency, or similar charges" within the meaning of the Act and Regulation Z. (Federal Reserve Board Official Staff Interpretation No. FC-0054 (March 21, 1977), 12 C.F.R. par. 226 (App. at 627).) Therefore, we conclude that since the mere right to accelerate payments upon default is not a default charge required to be disclosed under the Act or Regulation Z, plaintiff's disclosure of such right on both the front and back sides of the security agreement did not constitute a violation of section 1638(a)(9) of the Act or section 226.8(b)(4) of Regulation Z.

A separate and more difficult question is whether the creditor's policy with respect to rebate of unearned interest in the event of acceleration of payments must be disclosed on the face of the security agreement by the creditor under section 1638 of the Act or section 226.8 of Regulation Z. We have found no Illinois cases deciding this issue; however, several Federal circuit courts of appeals have considered the question and have

reached differing conclusions. At one extreme is a decision by the Tenth Circuit in *Begay v. Ziems Motor Co.* (10th Cir. 1977), 550 F.2d 1244. The court in *Begay* held that disclosure of the right to retain unearned interest is *never* required because there is no specific statutory provision or regulation requiring such disclosure. Disclosure would be required only if the Federal Reserve Board made such a disclosure requirement explicit by regulation. At the other extreme, the Ninth Circuit in *St. Germain v. Bank of Hawaii* (9th Cir. 1977), 573 F.2d 572, held that a creditor is *always* required to disclose whether a rebate of unearned interest will be made upon acceleration and also to disclose the method by which the amount of unearned interest will be computed if the debt is accelerated. The court equated acceleration of payments upon default with voluntary pre-payment and found that since the Act and Regulation Z require disclosure of the rebate policy with respect to voluntary prepayment, disclosure should also be required with respect to acceleration. The court interpreted section 226.8(b)(7) of Regulation Z, which requires disclosure of the rebate policy upon voluntary prepayment, to apply to both voluntary prepayment and involuntary prepayment.

Other courts have adopted the view that disclosure of the creditor's rebate policy upon acceleration is required under *certain* circumstances. The Third Circuit in *Johnson v. McCrackin-Sturman Ford, Inc.* (3d Cir. 1975), 527 F.2d 257, held that unearned interest that is retained by the creditor after acceleration of payments constitutes a "default, delin-quency, or similar charges" under section 1638(a)(9) of the Act and section 226.8(b)(4) of Regulation Z, but that disclosure is not required where State law requires a rebate of unearned interest after acceleration and where the method of rebating unearned interest for voluntary prepayment is disclosed. The court in *Johnson* reasoned that the laws of the state in which the contract is executed or performed become a part of the contract and thus the Pennsylvania law prohibiting the retention of unearned interest (and which was applicable to the contract in *Johnson*) was incorporated into the retail installment contract and further disclosure was not required. The court in *St. Germain v. Bank of Hawaii* criticized the *Johnson* decision, stating at page 575 that:

> "The Third Circuit's addition of the state law element not only complicates the rule, but also builds into the statute and the regulation a morass of conflicting and uncertain state law. * * * The end product of the Third Circuit's interpretation is the disclosure of rebate confusion."

The Fifth Circuit in *McDaniel v. Fulton National Bank* (5th Cir. 1978), 571 F.2d 948, held that where the loan contract on its face purports to give the creditor the right to accelerate and demand payment of the entire indebtedness, including precomputed but unearned interest on

future installments, the creditor is required to disclose his rebate policy. The court reasoned that the payment of unearned interest constitutes a "default, delinquency, or similar charges payable in the event of late payment." The court in *McDaniel* cited as support Federal Reserve Board Official Staff Interpretation No. FC-0054, which stated that "if the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed under §226.8(b)(7) [prepayment provision] when the customer pays the balance of the obligation upon acceleration, any amounts retained beyond those which would have been rebated under the disclosed rebate provisions do represent the type of charge that must be disclosed under §226.8(b)(4) [as a default delinquency or other similar charge]."

Finally, the Eighth Circuit in *Griffith v. Superior Ford* (8th Cir. 1978), 577 F.2d 455, held that disclosure is required only if the creditor's actual, although unwritten, policy is to retain unearned interest in the event of early payment upon acceleration. The court found no language in Staff Interpretation No. FC-0054 requiring disclosure in situations where the creditor did not actually retain the unearned finance charge. Further, the court cited Federal Reserve Board Letter No. 1208 (Federal Reserve Board Staff Letter No. 1208 (July 6, 1977), 5 CCH Consumer Credit Guide par. 31, 647) which construed FC-0054 as requiring disclosure only where the creditor's actual policy was to retain unearned interest upon acceleration of payments. A recent decision by the district court for the Northern District of Illinois followed *Griffith* and held that disclosure is required only if the creditor's actual policy is to retain unearned interest. (*Valencia v. Anderson Brothers Ford* (N.D. Ill. No. 78 C 1718, filed Oct. 31, 1978) (unpublished opinion by Judge McMillen).) The court in *Valencia* found that under the terms of the contract in question the defendant-creditor did not retain unearned interest upon prepayment and that according to an affidavit filed by the defendant-creditor, it was the policy and practice of the creditor to rebate the unearned portion of the finance charge in the case of an acceleration of payments upon default.

■■ A review of the various Federal cases shows that it is generally agreed that if the creditor retains the unearned interest after acceleration, this fact must be disclosed since the unearned interest would constitute a default charge within the meaning of the Act and Regulation Z. The courts do not agree, however, as to whether disclosure is required when the unearned interest is in fact rebated by the creditor. The Federal Reserve Board has indicated through interpretations and letters that disclosure is required only when the creditor's actual policy is to retain unearned interest, and that no disclosure is required if (1) the creditor rebates unearned finance charges in connection with prepayment upon acceleration using the same method as for voluntary prepayment and

(2) the method of computing the rebate for voluntary prepayment has been properly disclosed. (See Federal Reserve Board Letter No. 1324 (November 14, 1978), 5 CCH Consumer Credit Guide par. 31, 827.) Although the Board's opinions are not binding on this court, we consider the Board's opinions to be persuasive authority, and it is our conclusion that such opinions should be followed in the absence of Illinois authority on the rebate policy issue.

■■ In the case at bar the security agreement executed by the parties disclosed on the front side of the agreement the rebate policy for voluntary prepayment and also disclosed the creditor's right to accelerate payments upon default. The security agreement is silent as to the creditor's rebate policy upon acceleration. However, it is not disputed that plaintiff computed a rebate of unearned interest with regard to defendant's obligation and excluded such amount in his request for a deficiency judgment. There is nothing in the record, however, to indicate the method of computing the amount of rebate acknowledged by plaintiff in this instance and there is no evidence to show whether the rebate was computed in accordance with the rebate policy for voluntary prepayment. Thus, based on the record before us, we cannot determine whether plaintiff complied with the disclosure requirements as interpreted by the Federal Reserve Board. Therefore, we remand the cause for a hearing to determine whether the rebate to defendant was computed in accordance with the rebate policy for voluntary prepayment as disclosed by plaintiff in the security agreement. If plaintiff used some other method for computing the rebate to defendant, such method should have been disclosed on the face of the security agreement under sections 1638(a)(9) of the Act and section 226.8(b)(4) of Regulation Z.

Finally, plaintiff contends that defendant's counterclaim alleging violations of the Truth in Lending Act is barred by the one-year statute of limitations included in the Act. (15 U.S.C. par. 1640(e) (1970).) Plaintiff did not raise this issue in the trial court and therefore has waived the issue for purposes of appeal. *Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 243 N.E.2d 723.

Based on the foregoing we reverse the order of the circuit court vacating the judgment by confession in the amount of the deficiency balance and entering summary judgment for defendant. We remand the cause for proceedings not inconsistent with this opinion.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.