70443. CESSNA FINANCE CORPORATION v. DESIGN
ENGINEERING & CONSTRUCTION INTERNATIONAL, INC.
(335 SE2d 625)

POPE, Judge.

The appellee, Design Engineering & Construction International, Inc. (DECI), purchased an airplane from Outlaw Aircraft Sales, Inc. (Outlaw) on November 10, 1979 for $51,808. At that time DECI executed a sales contract and promissory note, pursuant to which Outlaw financed $40,000 of the purchase price and DECI granted Outlaw a security interest in the aircraft. Outlaw then assigned the promissory note and sales contract to the appellant, Cessna Finance Corporation (CFC).

DECI subsequently defaulted on the sales contract and the promissory note. On April 11, 1980 DECI filed suit against Outlaw, Cessna Aircraft Company, and CFC, alleging breach of implied warranties of merchantability and fitness for a particular purpose and seeking rescission of the contract and note. On August 7, 1980 CFC declared the unpaid balance, $38,432.33, immediately due and payable, as well as interest, and that attorney fees would be sought under the note if litigation was necessary to recover the amount due. On January 5, 1981 CFC was allowed to file a counterclaim against DECI for the indebtedness under the sales contract and promissory note. On January 26, 1982 the trial court granted summary judgment for CFC with regard to both DECI's claim against it and its counterclaim against DECI. The trial court's order awarded CFC $38,432.33, plus interest (at the annual rate of 11-½ percent) and attorney fees. On appeal, this court affirmed that grant of summary judgment for CFC. *Design Engineering Constr. Intl. v. Cessna Fin. Corp.*, 164 Ga. App. 159 (296 SE2d 195) (1982).

On April 12, 1983 CFC filed a motion to have the grant of summary judgment entered as a final judgment under OCGA § 9-11-54 (b). Before any disposition of this motion, however, CFC repossessed the aircraft on April 21, 1983. By letter dated April 22, 1983, CFC advised DECI of the repossession; that DECI could redeem the aircraft by payment of $39,352.69 plus any other expenses that accrued after the repossession; that if payment were not received by May 7, 1983, the aircraft would be offered for private sale (although DECI could still redeem the aircraft any time before its sale); and that CFC would look to DECI for any deficiency after the sale. DECI neither attempted to redeem the aircraft nor contacted CFC about the matter. This redemption notice inadvertently reflected an incorrect bal-

ance due; the actual amount due at the time of the notice was $52,613.14.

On May 11, 1983 CFC solicited bids for the aircraft from approximately 600 sources, and on May 12, 1983 CFC informed DECI of this solicitation. Twenty-eight bids, ranging from $17,000 to $36,111, were eventually received, and on May 25, 1983 the aircraft was sold to the highest bidder. The fair market value of the aircraft at the time of repossession was estimated at $34,300. CFC subsequently amended its motion for entry of final judgment to a claim for a deficiency judgment. By the time of trial, the amount sought by CFC as a deficiency was $25,044.30, due to additional accrued interest and attorney fees.

At trial DECI's president, Allan J. Feifer, admitted that he had noticed the discrepancy between the amount awarded CFC earlier in the grant of summary judgment and the balance specified in the redemption notice; without making any inquiry, he assumed that the notice superseded the summary judgment award. Feifer also testified that DECI had not responded to the redemption notice because it had expected that the aircraft would be sold at a price close to the amount stated in the notice. Nevertheless, Feifer also admitted that he would not have redeemed the aircraft at all because he considered it unfit and unmerchantable.

The trial court found that DECI had relied to its detriment upon the mistaken understatement of the redemption price in the notice, rendering CFC's sale of the aircraft commercially unreasonable and thus depriving CFC of the right to recover any deficiency. This appeal followed. *Held*:

OCGA § 11-9-504 (3) provides that "the disposition [of repossessed collateral] including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ." Strict compliance with the notice requirements of OCGA § 11-9-504 is a condition precedent to recovery of any deficiency between the sale price of the collateral and the amount of the indebtedness. *Gurwitch v. Luxurest Furn. Mfg. Co.*, 233 Ga. 934 (214 SE2d 373) (1975); *Citizens State Bank v. Hewitt*, 158 Ga. App. 238 (279 SE2d 531) (1981).

The evidence supports the trial court's conclusion that the disposition of the aircraft was *not* commercially reasonable because the understated balance misled and prevented DECI from taking steps to protect its interest; i.e., under these circumstances DECI did not receive the reasonable notification required by OCGA § 11-9-504 (3) of the intended disposition of the aircraft. See *Wilmington Trust Co. v.*

*Conner*, 415 A2d 773 (II) (Del. 1980). The purpose of the reasonable notification requirement is that it gives the debtor the opportunity to exercise its redemption rights, it affords the debtor an opportunity to seek out buyers for the collateral, and it allows the debtor to oversee every aspect of the disposition in order to maximize the possibility that a fair sale price will be obtained. Id. See *Barbree v. Allis-Chalmers Corp.*, 250 Ga. 409 (297 SE2d 465) (1982); *Geoghagan v. Commercial Credit Corp.*, 130 Ga. App. 828 (204 SE2d 784) (1974). Feifer testified that although he was aware of the amount awarded earlier by the trial court and the fact that interest was running, he believed that the amount due stated in CFC's letter was the correct amount because the letter was the most recent statement of the debt. Feifer further testified that while he personally believed that the aircraft was unsafe to fly and "wasn't worth one dollar," DECI did not respond to the redemption notice because it had expected that the aircraft would be sold at a price close to the amount stated in the notice. Although such testimony is in conflict with other evidence, it is reasonable to conclude that the statement of the amount due prevented DECI from taking steps to insure there remained no deficiency. Therefore, even if DECI had no interest in redeeming the aircraft itself, it could have solicited other bids or overseen the costs to prevent a large deficiency from resulting.

When a trial court sits as both judge and jury, the court's findings of fact are binding on appeal, and, unless wholly unsupported or clearly erroneous, will not afford a basis for reversal. OCGA § 9-11-52 (a); see *American Century Mtg. Investors v. Strickland*, 138 Ga. App. 657 (1) (227 SE2d 460) (1976). On appeal, this court must not substitute its judgment for that exercised by the trial court when there is some support for the trial court's conclusion. Our duty is not to weigh evidence de novo, but to merely determine if there is any evidence which supports the judgment below. *Bhattacharjee v. Kunnatha*, 165 Ga. App. 75, 76 (299 SE2d 144) (1983). Even in the face of conflicting evidence, the trial court's judgment will be upheld as long as there is "any evidence" to uphold the lower court's determination. See *Cooper v. Rosser*, 232 Ga. 597 (1) (207 SE2d 513) (1974). There was some evidence to support the trial court's determination, and, that being so, the judgment below must be affirmed.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Benham and Beasley, JJ., concur. Deen, P. J., Birdsong, P. J., Carley and Sognier, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

As noted by the majority opinion, OCGA § 11-9-504 (3) requires that the disposition of repossessed collateral be commercially reasonable. The purpose of the "reasonable notification" requirement of

OCGA § 11-9-504 (3) is to afford a debtor the opportunity to protect his interests at the sale (by challenging aspects of the sale or seeking out potential buyers) or to redeem the collateral prior to any sale. *Barbree v. Allis-Chalmers Corp.*, 250 Ga. 409 (297 SE2d 465) (1982); *Geoghagan v. Commercial Credit Corp.*, 130 Ga. App. 828 (204 SE2d 784) (1974). Providing the debtor with reasonable notification of the intended disposition, in short, enhances the likelihood of a commercially reasonable disposition.

In the instant case, it appears that the actual "method, manner, time, place, and terms" of the disposition of the aircraft could hardly have been more commercially reasonable. See *Farmers Bank, Union Point v. Hubbard*, 247 Ga. 431 (276 SE2d 622) (1981). CFC solicited approximately 600 bids from dealers, brokers, and individuals, and eventually sold the airplane to the highest bidder for more than its estimated fair market value. To facilitate the matter, CFC also financed the sale. A debtor's interest at a repossession sale obviously is that the collateral be sold for as much as possible, and that was done in the instant case.

I cannot subscribe to the conclusion of the majority opinion that the understatement of the balance due in the redemption notice rendered CFC's repossession and sale of the airplane commercially unreasonable. The statute itself does not even require that a redemption notice declare the amount of indebtedness due. Compare *Cook v. First Nat. Bank of Atlanta*, 130 Ga. App. 587 (203 SE2d 870) (1974). This writer concurs with the implicit holding of the majority opinion that where a redemption notice nevertheless includes an inaccurate statement of the balance due and the inaccuracy misleads or prevents the debtor from exercising the right of redemption or otherwise protecting his interest, such a notice may render a sale commercially unreasonable; however, in the instant case there simply was no evidence that CFC's inadvertent understatement of the balance due so misled DECI as to prevent it from exercising its right to redeem the aircraft or otherwise participate in the disposition of the collateral. Although DECI's president did state that he had expected the proceeds of the sale of the airplane to approximate the balance claimed due in the redemption notice, he also admitted that he had had no interest in redeeming the aircraft even at that price because he considered it unfit and unmerchantable.

In summary, the understatement of the balance due in the redemption notice apparently did not cause DECI's failure to take any action to protect its interest, and it affected neither the purpose of the notification requirement nor the commercial reasonableness of the sale of the aircraft. The contrary conclusion of the majority opinion "overcomes me" but "it does not convince me." *Doyal Dev. Co. v. Blair*, 135 Ga. App. 337, 338 (217 SE2d 501) (1975). Accordingly, I

respectfully dissent.

I am authorized to state that Presiding Judge Birdsong and Judge Sognier join in this dissent. Judge Carley concurs in the judgment of the dissent only.

DECIDED SEPTEMBER 4, 1985 —
REHEARING DENIED SEPTEMBER 26, 1985 —

*Paul M. Talmadge, Jr., Stephen E. O'Day*, for appellant.
*Charles A. Ratz*, for appellee.