**Mary TRAVIS, Rhonda Wesley, and Patricia A. Smith, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BOULEVARD BANK N.A., Defendant.**

No. 93 C 6847.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, for plaintiffs.

Craig M. White, Wildman, Harrold, Allen & Dixon, Mary Kinsella Lawler, Franczek, Sullivan, Mann, Crement, Hein, Relias, P.C., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Magistrate Judge Rebecca R. Pallmeyer has submitted a Report and Recommendation ("Report") to the court concerning Defendant's motion to dismiss and Plaintiffs' motion for class certification. The parties have submitted their objections to the Report. In accordance with 28 USC § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the court undertakes a de novo determination of those parts of the Report to which objection has been made.

## I. BOULEVARD BANK'S MOTION TO DISMISS

### A. Count I: RICO

The magistrate judge recommends dismissal of Count I of the Amended Complaint for failure to establish a pattern of racketeering activity. The magistrate judge also recommends that the dismissal be without prejudice to the filing of a second amended complaint because the other elements required by RICO are adequately alleged. Neither party objects to these recommendations, and the court will adopt them.

### B. Count II: The Truth in Lending Act

In her report, Magistrate Judge Pallmeyer recommends that the court deny Defendant's motion to dismiss Count II of the Amended Complaint. In Count II, Plaintiffs allege that Defendant violated the Truth in Lending Act ("TILA"), 15 USC §§ 1601 et seq. and Federal Reserve Board Regulation Z, 12 CFR part 226. According to Plaintiffs, Defendant did this when, without proper authorization, it procured insurance against Plaintiffs' default and charged Plaintiffs for such insurance. Charging Plaintiffs for such insurance, they allege, constitutes a "finance charge" and, because this charge came after the original loan, they argue it constitutes a new credit transaction requiring new disclosures. Further, Plaintiffs argue, by failing to make the required new disclosures, Defendant violated TILA and Regulation Z. Magistrate Judge Pallmeyer agreed that Plaintiffs had stated a claim under TILA. Defen-

dant raises several objections to Magistrate Judge Pallmeyer's conclusion.

### 1. *Compliance With Rule 8(a)*

In its objections, Defendant argues that Plaintiffs TILA claim does not comply with Rule 8(a) of the Federal Rules of Civil Procedure because it fails to identify which, if any, provisions of TILA were violated. It also argues that it cannot properly respond to the Amended Complaint without knowing the "[s]pecific allegations regarding exactly what 'extra' coverages [Defendant] is alleged to have purchased for [Plaintiffs]." Defendant's Objections at 3. Without citation to any case, Defendant argues that these alleged failures justify dismissal of the claim.

■■■ The court disagrees. First, in order to withstand a Rule 12(b)(6) motion, a plaintiff need not identify the correct legal theory, nor any legal theory for that matter. See *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). It follows that a plaintiff can withstand a motion to dismiss by failing to specify which part of a statute upon which he relies. Second, as Plaintiffs point out, it is well settled in the Seventh Circuit that "a plaintiff ... responding to a motion to dismiss may apprise the Court, with or without factual support, of the precise facts consistent with the allegations of the complaint which he or she intends to prove and which would support the award of relief in favor of the plaintiff." Plaintiffs' Response at 4. See, e.g., *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439–40 (7th Cir.1994); *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 80 (7th Cir.1992); *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir.1985). If a plaintiff can raise an unsubstantiated version of the facts for the first time on appeal to fend off a motion to dismiss, then surely he can do so in argument before the district court. Here, Plaintiffs identify in their response to Defendant's objections the following "extra" coverages that violate TILA: (1) coverage against the expense incurred by Defendant in repossessing vehicles from defaulting borrowers, (2) coverage against the consequences of errors and omissions by Defendant in tracking borrowers' insurance and

making sure that borrowers comply with their contractual obligation to keep their vehicles insured, (3) coverage against the consequences of Defendant or its agents damaging repossessed collateral after obtaining it, (4) coverage against acts by the borrower that impaired Defendant's security interest, (5) coverage that would pay the loan off if the vehicle were stolen or damaged beyond repair, when the vehicle was worth less than the loan balance, and (6) coverage indemnifying Defendant in the event that it was unable to collect amounts due from borrowers. See Plaintiffs' Response at 1–2 & Attachment A. Plaintiffs have adequately identified the extra coverages that Defendant supposedly purchased. The court concludes that the TILA claim complies with Rule 8(a).

### 2. *Whether TILA Required Defendant to Make New Disclosures*

■■■ In her Report, Magistrate Judge Pallmeyer notes Plaintiffs' argument in support of their position that the premiums for insurance covering default and unearned finance charges, which Defendant purchased and charged to Plaintiffs, should have been disclosed. In short, Plaintiffs argued that these charges constituted new "finance charges," and that these new finance charges constituted a new credit transaction requiring Defendant to make new disclosures. Magistrate Judge Pallmeyer then discussed the objections raised by Defendant in response to this line of argument. From Magistrate Judge Pallmeyer's discussion, it appears that Defendant did not challenge the argument that the procurement and financing of the allegedly unauthorized insurance constituted a new credit transaction which required new disclosures. More significantly, Defendant fails to raise any such argument before this court in its objections to the Report.

The court believes that the Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction. Defendant's action involved augmenting Plaintiffs' existing finance charge with an additional finance charge for the resulting

premiums. This transaction required new disclosures under TILA. See *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580, 601 (N.D.Ill.1994) (concluding that "the charge to plaintiffs' account [for the purchase of allegedly unauthorized insurance] could be found to be a finance charge subject to TILA disclosure requirements"); 12 CFR § 226.18 ("For each transaction, the creditor shall disclose ... [t]he finance charge.").

■ Defendant also argues that the inaccuracy in its initial disclosure was not a violation under 12 CFR § 226.17(e). However, the court's conclusion that Defendant engaged in a new transaction, requiring new disclosures, would appear to render this argument moot. Nevertheless, for completeness, the court will discuss the implications of § 226.17(e). Section 226.17(e) provides:

> If a disclosure becomes inaccurate because of an event that
> occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20

The Staff Commentary to § 226.17(e) elaborates on the meaning of this provision:

> Inaccuracies in disclosures are not violations if attributable to events occurring after the disclosures are made. For example, when the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it, such a change does not make the original disclosures inaccurate. The creditor may, however, be required to make new disclosures under § 226.17(f) or § 226.19 if the events occurred between disclosure and consummation or under § 226.20 if the events occurred after consummation.

Defendant argues that the alleged inaccuracy in the disclosure to Plaintiffs was the result of a subsequent event, i.e., Plaintiffs' default

on their promise to insure the collateral. Defendant then argues that it was not required to make new disclosures because none of the cross-referenced sections applied. For example, section 226.20(a) applies to "refinancings," and according to Defendant, no refinancing occurred here.[1]

The magistrate judge concluded that the subsequent inaccuracy in Defendant's disclosure was not the result of Plaintiffs' failure to procure insurance on the collateral, but rather was the result of Defendant's departure from the contract. The court agrees. Upon Plaintiffs' default on their promise to procure insurance, the retail installment sales contract permitted Defendant to purchase only insurance against fire, theft and collision.

Although not entirely clear, Defendant appears to suggest that even if its initial disclosure became inaccurate because of its own action (the procurement of unauthorized insurance and charging it to Plaintiffs' account), § 226.17(e) nevertheless dictates that the disclosure is not a violation of the regulation. Again, the court disagrees. The nature of the example given in the Staff Commentary to § 226.17(e)—a failure by the *consumer* to fulfill a prior commitment—suggests that the immunity for inaccuracies caused by subsequent events is not to be afforded to the creditor when the creditor causes the events that result in the inaccuracies. Applying § 226.17(e) where the subsequent inaccuracy was caused by the creditor would transform TILA, the purpose of which is to *advance* the informed use of credit on the part of the consumer, see 15 USC § 1601(a), into a potential vehicle for fraud by creditors. Considering the fact that TILA is to be interpreted liberally to achieve its purpose, *Smith v. Fidelity Consumer Discount*, 898 F.2d 896, 898 (3d Cir.1990); *Bizier v. Globe Fin. Servs.*, 654 F.2d 1, 3 (1st Cir.1981), the court concludes that Defendant's interpretation of § 226.17(e) cannot be right.

---

1. The magistrate judge did not base her recommendation on the premise that new disclosures were required under any of the sections cross-referenced in § 226.17(e). Rather, she concluded that § 226.17(e) did not apply in the instant

case to immunize the inaccuracies in Defendant's disclosures. Because the court agrees with the magistrate judge's conclusion, it is not necessary to discuss Defendant's argument concerning refinancing.

Plaintiffs have stated a claim under TILA. The court will adopt the magistrate judge's recommendation regarding Count II.[2] The motion to dismiss Count II will be denied.

### C. Count III: The Illinois Consumer Fraud Act

The magistrate judge recommends that the court deny Defendant's motion to dismiss with respect to Plaintiffs' claim based on the Illinois Consumer Fraud Act. Neither party objects to this recommendation. The court will adopt this portion of the Report. The motion to dismiss Count III will be denied.

### D. Count IV: Breach of Contract

■ In the Amended Complaint, Plaintiffs allege (among other things) that Defendant breached the retail installment sales contract. The contract authorized Defendant to purchase insurance on the vehicle against loss by fire, theft, and collision if the Plaintiffs failed to do so. Plaintiffs claim that Defendant purchased insurance in addition to that authorized under the contract and charged it to them.

Defendant argues that Plaintiffs have failed to allege all the essential elements of a cause of action for breach of contract, and hence Count IV must be dismissed. Specifically, Defendant argues that Plaintiffs have not alleged that they performed the retail installment sales contract according to its terms. Defendant points out that Plaintiffs admit in the Amended Complaint that they failed to perform under the contract. Consequently, Defendant argues that Plaintiffs cannot sue on the contract. Defendant's Objections at 10.

Defendant's argument is based on an incorrect understanding of Plaintiffs' claim. As Plaintiffs point out, their claim is not based on some failure by Defendant to perform its duties under the contract; rather, they claim that Defendant violated a contractual specification of remedies, and "[a] contractual specification of remedies for breach necessarily contemplates that there has been a breach, and is necessarily enforceable by the breaching party notwithstanding the breach." Plaintiffs' Response at 12. This distinguishes the instant case from the only case cited by Defendant, *Allstate Insurance Co. v. Winnebago County Fair Ass'n*, 131 Ill.App.3d 225, 86 Ill.Dec. 233, 239, 475 N.E.2d 230, 236 (1985). In that case, the plaintiff claimed that the defendant warehouseman breached its duty to store property with the required level of care. The plaintiff did *not* claim that Defendant violated a contractual specification of remedies. Plaintiffs' failure to perform under the contract is presumed by their claim and certainly does not defeat their claim that Defendant breached the specification of remedies in the retail installment sales contract.

Defendant also argues that, upon Plaintiffs' default, it was entitled to terminate the contract or repossess the vehicle. This is irrelevant. The court must determine whether Defendant's alleged procurement of unauthorized insurance constitutes a breach of contract.

Finally, Defendant argues that Plaintiffs do not adequately allege that any of Defendant's actions proximately caused injury to Plaintiffs. The court agrees with Magistrate Judge Pallmeyer's discussion in which she concludes that Plaintiffs have adequately alleged proximate cause. See Report at 15–17.

The court will adopt the portion of the Report discussing Count IV. The motion to dismiss Count IV will be denied.

### E. Count V: The Illinois Uniform Commercial Code

■ In the Amended Complaint, Plaintiffs claim that Defendant failed to give them notice of the resale of their vehicle that complied with § 9–504 of the Uniform Commercial Code (as enacted by Illinois, 810 ILCS § 5/9–504). According to the Amended Complaint, the notices misrepresented that Plaintiffs would have to pay an amount including unauthorized force placed insurance premiums in order to recover their vehicles. As a result of the alleged inadequate notice, they

---

**2.** The court notes that the Report contains a number of references to § 226.18(e), though from the context, it appears that the magistrate judge must have been referring to § 226.17(e). With this caveat, the court will adopt the Report as it pertains to Count II.

claim they are entitled to damages under § 9–507.

In her Report, the magistrate judge agreed with Defendant that Plaintiffs had failed to state a claim because

§ 9–504 states that the secured party (here, Defendant) need only provide the debtor (Plaintiffs) with "reasonable notification of the *time and place* of any public sale or reasonable notification of the *time* after which any private sale or other intended disposition is to be made...." 810 ILCS 5/9–504(3) (emphasis added). Significantly, this section goes on to state that "[i]n the case of consumer goods to [sic] *no other notification need be sent.*" *Id.* (emphasis added). Defendant is not required to provide Plaintiffs with any information on the balance due.

Report at 28. No cases are cited in support of this reasoning. In their objections, Plaintiffs argue that "[i]t does not follow from the premise that no statement of the amount due is required that an *inflated* statement of the amount due is not actionable." Plaintiffs' Objections at 2. They contend that a notice that overstates the amount due contravenes the purposes of the notice requirement and therefore, is not reasonable notification as is required by § 9–504.

In response, Defendant argues first that the notice it sent to Plaintiffs did not even state the amount due, so therefore, even if misrepresenting the amount due in the notice were actionable, no misrepresentation occurred here. Defendant cites to Exhibit H to the Amended Complaint, which is a letter dated August 16, 1993, from Defendant to plaintiff Patricia Smith indicating that the vehicle would be sold at a private sale after September 3, 1993. It contains no statement of the amount due. If this were the only notice sent to Plaintiffs, the court would agree that Defendant complied with § 9–504. However, also attached to the Amended Complaint is Exhibit E. Exhibit E is a letter from Defendant to plaintiff Mary Travis. Like the other letter, it is dated August 16, 1993. It states that plaintiff Travis can recover the vehicle if she pays a total of $6,685.26. This amount, according to Plaintiffs, includes certain unauthorized insurance premiums paid for by Defendant and charged to Plaintiffs' account.

The court does not agree with Defendant that it can focus solely on the letter to plaintiff Smith. If the court took this approach, then a creditor could send one letter to the debtor that complies with § 9–504 and then immediately send another letter contradicting the first letter, or (as is alleged in this case) misrepresenting the debtor's rights and obligations. The court concludes that it is appropriate to consider both the letter to Smith and the letter to Travis in determining whether Plaintiffs have stated a claim under §§ 9–504 and 9–507.

On the merits, Defendant argues that few cases support Plaintiffs' position; that the Illinois cases cited by Plaintiffs are distinguishable; and that several cases from other states have rejected Plaintiffs' position. In resolving the instant dispute, the court must apply Illinois law. Because there are no Illinois cases directly on point, the court must try to predict how the Illinois courts would answer the question presented here. In doing this, the court will look to relevant statements by Illinois courts regarding the policies behind the notice requirement, any cases on point from other jurisdictions, and any cases from Illinois or other jurisdictions that present analogous situations. After undertaking such an analysis, the court concludes that Plaintiffs have stated a claim.

It is accepted in Illinois that the purposes behind the notice requirement are:

"(1) it gives the debtor the opportunity to exercise his redemption rights under section 9–506; (2) it affords the debtor an opportunity to seek out buyers for the collateral; and (3) it allows the debtor to oversee every aspect of the disposition, thus maximizing the probability that a fair sale price will be obtained."

*Boender v. Chicago North Clubhouse Ass'n,* 240 Ill.App.3d 622, 181 Ill.Dec. 134, 140, 608 N.E.2d 207, 213 (1992) (quoting *Wilmington Trust Co. v. Conner,* 415 A.2d 773, 776 (Del. 1980)) (citations omitted), *appeal denied,* 151 Ill.2d 561, 186 Ill.Dec. 379, 616 N.E.2d 332 (1993); see also 2 J.J. White & R.S. Summers, *Uniform Commercial Code* § 27–12, at

598–99 (3d ed 1988) (hereinafter "White & Summers"). Moreover, *Boender* also states that " '[a]ny aspect of the notice that is contrary to these purposes necessarily prevents it from being "reasonable notification.' " *Boender*, 181 Ill.Dec. at 140–41, 608 N.E.2d at 213–14) (quoting *Wilmington Trust*, 415 A.2d at 776); see also White & Summers at § 27–12, p 599 ("Cases involving notice issues should be resolved with these three purposes in mind."). The question, therefore, is whether the alleged overstatement of the amount due frustrates one or more of the purposes behind the reasonable notification requirement.

In *Wilmington Trust, supra,* the creditor sent the debtor a notice of resale that overstated the amount due on the vehicle. After the vehicle was sold at a private sale, the creditor brought an action to recover the deficiency due. The debtor defended on the ground that he had received defective notice under the Delaware version of UCC § 9–504(3). The trial court agreed and denied the creditor's motion for summary judgment. The intermediate appellate court reversed. On appeal, the Delaware Supreme Court held that the notice was defective. In making this holding, the court observed that "the insertion of an unduly inflated figure in the notice discourages and perhaps frustrates the attempts of the debtor to find another buyer or to exercise his redemption rights." *Id.* at 776. In response to the creditor's argument that its notice was reasonable because § 9–504(3) does not require any statement of the amount due, the court stated:

> We cannot accept this conclusion. The adoption of this rationale would lead to the absurd conclusion that the notice of resale may contain misleading information of any kind so long as certain statutory catch words or phrases are included. Moreover, whether § 9–504(3) requires that the balance due be placed in the notice of resale is tangential to the issue in question. The key issue is whether "reasonable notification" was given. We hold that this notice, which contained a stated balance that was inflated $654.61 above the amount actually owed, was not "reasonable notification."

*Id.* The *Wilmington Trust* court's reasoning has been applied in another case where the notice contained an incorrect statement of the balance due. See *Cessna Finance Corp. v. Design Engineering & Construction Int'l, Inc.*, 176 Ga.App. 206, 335 S.E.2d 625, 627 (1985).

Defendant argues that courts in at least two cases have rejected *Wilmington Trust's* approach. Specifically, Defendant cites *Tillquist v. Ford Motor Credit Co.*, 714 F.Supp. 607 (D.Conn.1989), and *Richardson Ford Sales, Inc. v. Johnson*, 100 N.M. 779, 676 P.2d 1344 (App.1984). The court believes that these two cases are not on point. In *Tillquist,* the court first stated its belief that the Connecticut courts would not impose liability on creditors for "inadvertent" mistakes in the notice. In this case, Plaintiffs claim that Defendant committed fraud, not that it made an inadvertent mistake. The second reason the *Tillquist* court gave was that it failed to find a mistake in the notice. Because of the procedural posture of the instant case, the court must accept as true that there was a misrepresentation in Defendant's notice. In *Johnson,* the court did not reject *Wilmington Trust;* rather, the court distinguished *Wilmington Trust* on the ground that, in *Johnson,* the notice stated the correct amount due when it was sent, whereas in *Wilmington Trust,* the notice was inaccurate from the start. See *Johnson,* 676 P.2d at 1350. On this point, the instant case is distinguishable from *Johnson,* not from *Wilmington Trust.*

Nevertheless, the question remains: If confronted with the issue, would the Illinois courts agree with *Wilmington Trust?* Although there is little to go on, the court thinks so. First, a leading treatise on the UCC cites *Wilmington Trust* as an indication of what the courts tend to do in these circumstances. See White & Summers at § 27–12, p 602 & n 19. Second, the reasoning in *Boender, supra,* suggests that the Illinois courts would agree with *Wilmington Trust.* In *Boender,* the Illinois Appellate Court reversed the circuit court's ruling that the creditor's notice was reasonable as a matter of law. In that case, Boender, the creditor, sent notice to the debtor that included the time, date and location of the sale. The

notice also specified a condition for bidding at the sale, namely that each bidder must have deposited a $50,000 cashier's check with Boender prior to bidding. In considering the debtor's argument that the notice was unreasonable, the court quoted *Wilmington Trust* to identify the three purposes of the § 9–504 notice requirement. The court then stated:

> The reasonableness of notice is usually a question of fact. Whether [the creditor's] requirement that all prospective bidders submit cashier's checks in advance of the bidding denied [the debtor] the fulfillment of any of the purposes set for in [*Wilmington Trust*] particularly points (2) and (3) ... apparently was decided as a matter of law by the circuit court. This was error.

*Boender* 608 N.E.2d at 214. Significantly, although Boender gave the debtor the required notice of the time, date, and location of the sale, the Illinois Appellate Court did not hold that the notice was necessarily reasonable.[3] The reasoning in *Boender* suggests that it would be inappropriate to decide that Defendant's notice was reasonable as a matter of law.

This conclusion is buttressed by cases from other jurisdictions where the courts have held that the giving of misleading information in the notice, even where the particular type of information is not required, renders the notice defective. See *Coones v. Federal Deposit Insurance Corp.*, 848 P.2d 783, 803 (Wyo.1993) (stating that "[t]he underlying presumption [of § 9–504] is that the information presented is accurate," and holding that the notice at issue was defective because it misrepresented debtor's right to redeem under § 9–506); *Topeka Datsun Motor Co. v. Stratton*, 12 Kan.App.2d 95, 736 P.2d 82, 88 (Because "the only notice given the debtor in this case misrepresents her redemption rights, we conclude it was unreasonable as a matter of law."), *review denied*, 241 Kan. 840 (1987); *First Nat'l Bank of Maryland v. DiDomenico*, 302 Md. 290, 487 A.2d 646, 648–49 (1985) ("First National's notice to DiDomenico undertook to present DiDomenico's redemption rights but did so in a manner which described them to be less favorable to the debtor than they were in law. We hold that a notice containing this misstatement is not 'reasonable notification' under § 9–504(3)."); see also B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 4.08[7][e], at 4–148 (rev ed 1993). Although these authorities deal with the misrepresentation of redemption rights, the principle—that a creditor cannot include misleading information on the notice of resale that tends to frustrate one or more of the purposes of the notice—applies to Plaintiffs' allegation that Defendant misrepresented the amount due on their loan.

For all of the foregoing reasons, the court concludes that Plaintiffs have stated a claim under § 9–504 of the Illinois Uniform Commercial Code. The motion to dismiss Count V will be denied.

**F.  Standing**

Defendant argues that plaintiff Rhonda Wesley does not have standing to bring this suit. Defendant directs the court's attention to Exhibit B to the Amended Complaint. Exhibit B is a copy of the retail installment sales contract for the car purchased by Plaintiffs. Defendant points out that Wesley's name does not appear on the contract. Defendant argues that Wesley lacks standing to sue on the contract because she is neither a party to the contract nor a third-party beneficiary. Defendant's Objections at 12–13. The court disagrees. As the Seventh Circuit has said,

> [t]he "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so

---

3.  This demonstrates the inappropriateness of Defendant's reliance on general, out-of-context language in *Lake Shore Nat'l Bank v. McCann*, 78 Ill.App.3d 580, 33 Ill.Dec. 577, 396 N.E.2d 1301 (1979). Defendant quotes the passage in that opinion where the court states that because "the notice specified the place, date and time of the sale, it complied with the requirements of section 9–504 for reasonable notification of a public sale of collateral." *Id.* 33 Ill.Dec. at 581, at 1305. *McCann* involved an issue not present here, namely, whether a notice of sale was defective when it failed to specify if the sale was public or private.

largely depends for illumination of difficult ... questions."

*Banks v. Secretary of the Indiana Family & Social Servs. Admin.*, 997 F.2d 231, 237 (7th Cir.1993) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The Amended Complaint alleges that "Ms. Travis, Ms. Wesley and Ms. Smith purchased a new 1991 Hyundai Excel from Grand Hyundai, Ltd.... [They] financed the purchase by means of a motor vehicle retail installment sales contract.... [T]heir intent was to jointly acquire the car." Amended Complaint at ¶¶ 12–13 & 16. These allegations support Plaintiffs' position that Wesley was a party to the contract. In addition, as noted in the previous section, the court believes Plaintiffs have alleged that Defendant proximately caused them injuries. Thus, the court concludes that Plaintiffs, including Rhonda Wesley, have standing.

## II. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

█ Plaintiffs seek to have this court certify a class "consisting of all persons who paid or were charged for forced place insurance by [Defendant] and whose retail installment contracts were outstanding during the ten years next [sic] before the filing of this action." Motion for Class Certification at 5. With respect to Count V (the UCC count), Plaintiffs have proposed a subclass consisting of class members who had their vehicles repossessed. Amended Complaint at ¶ 53.

Rule 23 of the Federal Rules of Civil Procedure governs class actions. Rule 23(a) identifies the prerequisites applicable to all class actions; Rule 23(b) specifies the three possible bases for maintaining a class action if the prerequisites are satisfied.

Under Rule 23(a),

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative

parties will fairly and adequately protect the interests of the class.

In her report, Magistrate Judge Pallmeyer recommends that the court deny the motion for class certification on the ground that "Plaintiffs ... have not asserted any nonconclusory allegations to establish that a class of claimants even exists, let alone that its size is such that joinder is impracticable." Report at 29. Thus, the magistrate judge concluded that Plaintiffs had failed to meet the first prerequisite to maintaining a class action.

Plaintiffs argue that the magistrate judge erred by looking "solely to the allegations of the complaint to determine whether the requirements of Rule 23 have been met." Plaintiffs' Objections at 7. They contend that the evidentiary materials submitted by both parties relating to the motion for class certification demonstrate the existence of the proposed class.

█ It is clear that in making a decision on class certification, "a court may look beyond the pleadings to depositions, affidavits and other documents on file." *Sample v. ALDI, Inc.*, No. 93 C 3094, 1994 WL 48780 *4 1994 US Dist LEXIS 1518, *12 (N.D.ILL. 1994) (citing *Berggren v. Sunbeam Corp.*, 108 F.R.D. 410, 411 (N.D.Ill.1985)); see also *Small v. Sullivan*, 820 F.Supp. 1098, 1109 (S.D.Ill.1992) (relying on documents produced in discovery to conclude that the numerosity requirement had been met); 2 H. Newberg & A. Conte, *Newberg on Class Actions* § 6.13, at 6–59 (3d ed 1992) ("[C]lass action rulings are frequently based on the pleadings, together with the briefs and affidavits that accompany a motion for a class determination."); 7B C.A. Wright, A.R. Miller & M.K. Kane, *Federal Practice & Procedure* § 1798, at 424–25 ("[T]he court may require plaintiff to supplement the pleadings with outside material in order to determine whether to certify an action under Rule 23."); cf. *Valentino v. Howlett*, 528 F.2d 975, 978–79 (7th Cir.1976) (affirming denial of motion for class certification, noting that "the district court was not provided with any proof that the class was so numerous that joinder was impracticable").

In the Amended Complaint, Plaintiffs allege several facts that at least suggest that a class of claimants exists and that joinder is impracticable. One of Plaintiffs' criteria for defining the class is that it includes those persons who "are or were obligated to [Defendant] on a consumer credit contract similar to *Exhibit B*, attached, the proceeds of which were used to purchase a motor vehicle." Amended Complaint ¶ 52a. Exhibit B to the Amended Complaint appears to be a standard form retail installment sales contract. Plaintiffs also allege:

> On information and belief, based on the fact that standard printed forms were used in connection with the scheme, the class is sufficiently numerous that joinder of all members is impractical. It is estimated that there are several thousand class members.

Amended Complaint ¶ 55. In addition, the exhibits to Defendant's response to Plaintiffs' motion for class certification also tend to suggest that Defendant's practice of force-placing insurance was widespread. For example, the affidavit of John Hessler, an officer of Defendant, describes Defendant's standard practice of procuring insurance from Prudential Property and Casualty Company after the borrower had failed to procure the required insurance. He also described how the cost of this insurance was charged to the borrower's loan. Hess Aff ¶¶ 7–8. Hessler estimated that "approximately 1500 loans in [Defendant's] current portfolio . . . have been charged for a collateral protection premium since April 1, 1990." Hess Aff ¶ 10. The exhibits to Hessler's affidavit are also instructive. Exhibit 1 is a General Endorsement of an insurance policy between Defendant and Prudential describing the insurance that Defendant would procure from Prudential when a borrower failed to procure insurance pursuant to a retail installment contract. It shows that Defendant procured, not just protection against fire, theft, and collision, as authorized by the retail installment sales contract, but also repossession expense coverage, automatic property protection coverage, repossessed property coverage, a special cancellation provision, and deficit unpaid balance protection.

The court does not believe that the Report includes a sufficient analysis of all the information relevant to the numerosity issue. The court notes that it reaches no conclusion on that particular issue; indeed, the court will not delve into class-certification matter any further. The court desires the magistrate judge's considered opinion on the issue. Plaintiffs state that "the only relief plaintiffs actually require is that they be given leave to submit a second amended complaint within 30 days and, within 14 days thereafter, an amended motion for class certification." Plaintiffs' Objections at 12. The court will approve this procedure. Therefore, the court will deny the motion for class certification without prejudice to filing an amended motion for class certification within 14 days after Plaintiffs file a second amended complaint, which is due within 30 days from the entry of this Memorandum Opinion and Order.

ORDERED: The magistrate judge's Report dated October 7, 1994 is adopted in part. The court adopts the entire Report except those portions discussing the dismissal of Count V (the UCC count) and the motion for class certification. Defendant's motion to dismiss is granted in part and denied in part. It is granted with respect to Count I, which is dismissed without prejudice. It is denied with respect to Counts II through V. Plaintiffs' motion for class certification is denied without prejudice. Plaintiffs' motion to file a second amended complaint is granted. Plaintiffs shall have 30 days after the entry of this Memorandum Opinion and Order in which to file a second amended complaint. Plaintiff's shall have 14 days after the filing of the second amended complaint in which to file an amended motion for class certification.