## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0192P (6th Cir.)
File Name:  00a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOHN A. BEGALA, STEVEN W.
BORCHERS, CYNTHIA
EDWARDS,
        *Plaintiffs-Appellants,*

        *v.*

PNC BANK, OHIO, NATIONAL
ASSOCIATION,
        *Defendant-Appellee.*

Nos. 98-3360;
99-3652

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00717—Sandra S. Beckwith, District Judge.

Argued:  February 3, 2000

Decided and Filed:  June 7, 2000

Before:  WELLFORD, BATCHELDER, and
        DAUGHTREY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Paul M. De Marco, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, for Appellants. Glenn V. Whitaker, VORYS, SATER, SEYMOUR &

PEASE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Paul M. De Marco, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, for Appellants. Glenn V. Whitaker, Phillip J. Smith, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellee.

———————————

## OPINION

———————————

ALICE M. BATCHELDER, Circuit Judge. Plaintiff John Begala filed his first lawsuit against PNC Bank on January 23, 1997. The lawsuit was based upon allegations that PNC violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. §1601 et seq., as well as various state laws by offering "payment holidays" to its loan customers without fully disclosing the additional interest that those customers would incur by accepting PNC's offer. Defendant PNC sought dismissal under Fed. R. Civ. P. 12(b)(6), and the district court dismissed plaintiff's TILA claims on July 30, 1997.[1] Begala brought a timely appeal and we affirmed the district court's decision on December 28, 1998. *See Begala v. PNC Bank* (*Begala I*), 163 F.3d 948 (6th Cir. 1998), *cert. denied,* 120 S.Ct. 166 (1999).

Begala again filed suit against PNC in the same federal court on August 5, 1997, while the appeal in *Begala I* was still pending. In the second suit, Begala alleged the same facts he had pled in *Begala I*, but this time he alleged violations not only of TILA and the same assortment of state laws but also the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962, and the National Bank Act ("NBA"), 12 U.S.C. §§ 85 and 86. PNC

———————————

[1]The district court evaluated the sufficiency of plaintiff's federal claims only. The pendent state law claims were then dismissed with the federal claims because the court declined to exercise supplemental jurisdiction over the state claims.

In short, the Court did not permit Plaintiffs to amend the complaint because they did not move to do so.

(Emphasis added.)

Plaintiffs argued in their brief that "there was no justification for denying plaintiffs the right to amend." The motion for clarification, as pointed out by the district court, was not a motion to amend; it was an effort to obtain an advisory opinion from the court. Plaintiffs state in their brief in Case No. 98-3360 that they "were never given an opportunity to further clarify their allegations with evidence." (Br. at 24.) Of course, the granting of a defendant's motion to dismiss does not ordinarily afford the unsuccessful plaintiffs any "opportunity to further clarify their allegations" with proof and evidence. What plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend.

The district court did not err or abuse its discretion in denying the post-judgment action of plaintiffs (post notice of appeal) which they characterize as their attempt "to obtain, via the procedure outlined in *First National Bank of Salem v. Hirsch*, 535 F.2d 343 (6th Cir. 1976), the right to amend they have sought and still seek." As pointed out by defendant in response, this was a second lawsuit by plaintiffs' lawyers "arising out of the same factual allegations." This effort, in our view, was also a second effort to relitigate that which might have been asserted in a complaint, a proposed amended complaint, or in a formal motion to amend prior to an adverse judgment and certainly before filing of a notice of appeal. We do not believe that *Hirsch* constitutes authority to find the district court's decisions to be erroneous nor a basis for a new round of allegations based upon the same factual scenario which resulted in our first decision found in *Begala I,* 163 F.3d at 948.

The district court, on April 13, 1998, ten days after a notice of appeal had been filed, set out appropriate light on its actions in denying this motion:

The purpose of the motion for clarification is, apparently, to learn whether the Court would have granted the motions to dismiss had Plaintiffs amended the complaint to add certain allegations. For the reasons that follow, the motion (Doc 28) is **DENIED**.

Plaintiffs contend, in their current motion and the reply memorandum in support thereof, that they requested leave to amend the complaint and that the Court should have granted them permission to do so instead of granting Defendant's motions to dismiss. A review of the docket in this matter reveals that Plaintiffs *never moved for leave to amend their complaint*. Rather, in opposition to the motions to dismiss, Plaintiffs requested that they be permitted to amend the complaint in the event that the Court found it to be deficient.

. . . An open request for the Court to permit amendment to cure deficiencies, once the Court identifies those deficiencies, will not defeat a meritorious motion to dismiss pursuant to Rule 12(b)(6). Had plaintiffs filed a motion to amend the complaint prior to this Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint. The Court would not have dismissed this action had it been convinced that the deficiencies in the complaint would have been cured by the proposed amendments. Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.

again moved for dismissal arguing that the duplicative claims in second suit were barred by res judicata and that the new claims failed to state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6). In response to PNC's motion, Begala amended his complaint to add two new plaintiffs, Stephen Borchers and Cynthia Edwards. PNC countered by again moving to dismiss the amended complaint citing res judicata and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

On March 6, 1998, the district court dismissed all of plaintiffs' federal claims, finding that Begala's individual claims were barred by the doctrine of res judicata and that the remaining claims were insufficient under Fed. R. Civ. P. 12(b)(6).[2] Plaintiffs took a two-fold approach to attacking that decision. First, they filed a timely notice of appeal from the order dismissing their claims. Second, they sought clarification of the order by the district court under Fed. R. Civ. P. 60(b) on the issue of whether the plaintiffs would be allowed to amend their complaint. The district court denied the plaintiffs' motion for clarification on April 9, 1999, and plaintiffs' sought a timely appeal from the April 9th order as well. The appeals have been consolidated for consideration by this Court.

## I. FACTUAL BACKGROUND

The facts in this case are generally undisputed. Plaintiffs Begala, Borchers and Edwards all took out installment loans with PNC's predecessor in interest. After PNC acquired the loans, PNC sent periodic letters to these (and other similar) debtors offering a "payment holiday." The terms of the letter indicated that the customer would be allowed to skip a payment now in return for the customer's agreement (1) to

---

[2]As in *Begala I,* the district court evaluated the sufficiency of plaintiffs' federal claims only. The pendent state law claims were then dismissed with the federal claims because the court declined to exercise supplemental jurisdiction over the state claims.

pay an "extension fee" in place of the monthly payment and (2) to pay an additional payment at the end of the loan.[3]

The plaintiffs each allege that when the time came to pay off their respective loans, they were unfairly surprised to discover that they had incurred additional interest charges. In addition, plaintiff Borchers alleges that a "payment holiday" was imposed upon him by PNC without his explicit authorization. The plaintiffs allege that this practice of offering payment holidays without fully disclosing the additional fees and interest charges incurred violates federal law, specifically TILA, RICO and NBA. With the exception of the unauthorized payment holiday allegation, PNC generally does not dispute the facts as alleged, but rather claims its practice does not violate any laws.

---

[3]PNC's offer of payment holiday to John Begala on May 21, 1993 follows:

PNC Bank would like to help you accumulate some extra cash during the vacation season by giving you an opportunity to postpone one loan payment.

Here's how it works. The authorization form attached below lists a loan extension fee, which is the payment you make now in order to postpone your regular payment. Simply sign the authorization and forward it along with your extension fee payment. Your loan term will automatically be extended by the one payment you're postponing now.

That's all there is to it. This offer is good until July 31, 1993 so you can postpone your June or July payment.

If you'd like to take advantage of this offer, here's your chance. Remember, just sign and detach the authorization provided below and return it with your extension payment in the enclosed envelope. We must receive your authorization and extension payment prior to your regular payment due date in the month during which you wish to postpone a payment.

If you have any questions regarding this offer please call 651-TALK.

For each of the loans at issue, PNC made one initial advancement of funds. There is no question that this action constituted a "loan made" as that term is used in Ohio Revised Code §§ 1151.21 and 1161.28. The plaintiffs participated in payment holidays that were not new credit transactions, but simply an increase of fees and interest on that original loan made. Because in Ohio selected banks can charge unlimited fees and interest on loans made, the additional fees and interest charged to the plaintiffs by PNC do not violate the NBA. Plaintiffs' complaint failed to state a cause of action upon which relief can be granted, and their claims under the NBA were properly dismissed.

### E.   Mr. Borcher's Unauthorized Payment Holiday Claim

The district court analyzed each allegation in plaintiffs' complaint, but did not explicitly discuss Mr. Borcher's unauthorized payment holiday claim. The district court apparently viewed the narrow allegation that PNC Bank imposed a payment holiday upon Mr. Borcher without his authorization as a claim sounding in state law and dismissed it with the plaintiffs' other state law claims. We think the district court's view was sound. However, to the extent that Mr. Borcher's claim might be argued as stating a cause of action under federal law, we have reviewed the applicable provisions of TILA and NBA and conclude that Mr. Borcher's allegation has no basis in federal law and is a state law claim only. Therefore, this claim was also properly dismissed by the district court.

### F.   Request to Amend Complaint

In connection with their failed RICO claim, plaintiffs argue on appeal that the district court erred in refusing to allow them to amend their complaint. We review for abuse of discretion a district court's denial of a motion to amend. *See LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1104 (6th Cir.1995).

charges did not violate the NBA.  The *Kenty* court agreed with the bank and concluded that advancing funds to pay the insurance premiums constituted a "loan made."  *See Kenty*, 92 F.3d at 393-4.

Plaintiffs misread *Kenty* to require that additional interest charges must be part of a *new loan made* before a national bank may charge unlimited interest.  *Kenty* did not so hold. *Kenty* merely recognized that for the unlimited interest provisions of Ohio Revised Code §§ 1151.21 and 1161.28 to be applicable, the interest must be charged as part of a "loan made."  The significant issue before the *Kenty* court was whether the additional funds advanced by the bank to pay the debtors' car insurance premiums were "loans made."[4]

In this case, PNC bank offered payment holidays that allowed the debtors to defer a regular loan payment by paying an extension fee and then making up the payment at the end of the loan.  We specifically held in *Begala I* that these payment deferrals were *not* new credit transactions.  *See Begala I*, 163 F.3d at 951.  Plaintiffs' costs associated with their loans did, of course, increase because the plaintiffs chose to extend their payment terms.  But, as there was no additional advancement of funds, i.e., no increase in the principal amount of the plaintiffs' loans, *Kenty's* analysis to determine whether an additional advancement of funds constituted a "loan made" is inapplicable to this case.

---

[4] The *Kenty* decision considered the question, raised by the parties, of whether the advancement of funds to pay the debtors' insurance premiums was a forebearance under Ohio Revised Code § 1343.01, rather than a loan made.  However, as Judge Merritt plainly recognized, Ohio Revised Code §1343.01 does not apply to the lending practices of banks in Ohio.  *See Gross v. Standard Oil Co.*, 345 N.E.2d 89, 91 (Ohio Ct. Common Pleas 1976) (recognizing that credit transactions with banking institutions are governed by Chapter 11 of the Ohio Revised Code while credit transactions entered into with other entities are governed by Chapter 13 of the Ohio Revised Code).

## II.  ANALYSIS

We review *de novo* a district court's dismissal for failure to state a claim.  *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotation marks and citations omitted).

> We must treat as true all of the well-pleaded allegations of the complaint.  All allegations must be construed in the light most favorable to the plaintiff.  In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint.

*Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) (citations omitted).  "Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."  *Scheid*, 859 F.2d at 436 (citing 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357, at 596 (1969)).  In addition, we review *de novo* district court dismissals of cases on res judicata grounds.  *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658 (6th Cir. 1990).

### A.  RES JUDICATA

The district court concluded that named-plaintiff Begala's individual federal claims in this action were barred by res judicata because the claims of *Begala I* were dismissed under Fed. R. Civ. P. 12(b)(6) and Begala simply reasserted the same facts in the present lawsuit. The doctrine of res judicata has four elements:

1. A final decision on the merits in the first action by a court of competent jurisdiction;
2. The second action involves the same parties, or their privies, as the first;
3. The second action raises an issue actually litigated or which should have been litigated in the first action;
4. An identity of the causes of action.

*Sanders Confectionary Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).

Begala's individual claims, previously dismissed by a court of competent jurisdiction, make essentially the same factual allegations between the same parties as did his claims in *Begala I*; therefore, his individual claims are precluded. *See City of Canton v. Maynard*, 766 F.2d 236, 239 (6th Cir. 1985) (per curiam) (affirming district court's 12(b)(6) dismissal of cause of action under principles of res judicata). Begala tries to distinguish this suit from *Begala I* by arguing that while the claims in the first lawsuit were limited to PNC's activities in carrying out its payment holiday program, the second lawsuit challenges the entire scheme of PNC in association with other entities to impose, collect, and cover up unlawful charges. This is a meaningless distinction. The payment holidays Begala challenged without success in *Begala I* are the same payment holidays at issue here. The law does not allow Begala the luxury of returning to federal court with the same set of facts until he succeeds in alleging a federal cause of action. *See Sanders,* 973 F.2d at 484 ("Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'"); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401-2 (1981) (explaining that res judicata is animated by principles of finality rather than by concerns of individual equity).

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State . . . where the bank is located . . . .

12 U.S.C. § 85. This statute has been interpreted by the United Sates Supreme Court, under the Most Favored Lender Doctrine, to allow banks to charge the rate allowed to the "most favored lenders" under state law. *Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314 n.26, (1978) (citing 12 C.F.R. § 7.7310(a)). Therefore, the question becomes one of Ohio state banking law, and the maximum interest rate allowed to banks under Ohio law determines whether PNC has charged excessive interest in this case. *See Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 393 (6th Cir. 1996).

Ohio law allows "building and loan associations" as well as "savings banks" to charge unlimited dues, fines, interest and premiums on loans made. *See* OHIO REV. CODE ANN. §§ 1151.21, 1161.28 (Anderson 1996). Therefore, under the Most Favored Lender doctrine, PNC may also charge unlimited interest on its loans made.

Plaintiffs rely heavily upon our earlier decision, *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996). In *Kenty*, the plaintiffs obtained car loans from the defendant national bank on the understanding that if they did not purchase auto insurance, the bank would purchase it for them. If the bank did purchase this insurance, the funds to pay the insurance were advanced by the bank and then added to the debtors' loans. The *Kenty* plaintiffs claimed that adding the premiums to their automobile loans constituted excessive interest and violated federal law. The bank countered by arguing that adding the premiums to the loan balance was an advancement of funds that constituted "loans made" and because the Most Favored Lender doctrine allowed the bank to charge any amount of interest on its "loans made;" these

inference be drawn against Begala, the non-moving party. Drawing that inference would violate established practice under Fed. R. Civ. P. 12(b)(6) and the rule that RICO pleadings are to be liberally construed. *See United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985).

Plaintiffs' complaint is nonetheless defective because plaintiffs have wholly failed to plead an association-in-fact. A properly pled RICO claim must cogently allege activity "that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993). In this case, the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages. Although the plaintiff may allege the separate elements of "enterprise" and "pattern of racketeering activity" through the same facts, *see Qaoud*, 777 F.2d at 1115, the complaint must contain facts suggesting that the behavior of the listed entities is "coordinated" in such a way that they function as a "continuing unit," *see Frank*, 4 F.3d at 1386. This complaint is entirely devoid of any such factual allegations. Accordingly, plaintiffs have failed to state a RICO claim, and the district court properly dismissed this claim under Fed. R. Civ. P. 12(b)(6).

## D.  NBA

The plaintiffs contend that PNC violated the National Bank Act ("NBA") by charging excessive interest in connection with the payment holidays. Because PNC is a nationally chartered bank, it is governed by the NBA, 12 U.S.C. §§ 38 et seq. (1988). The NBA and its accompanying regulations allow nationally chartered banks to charge interest up to the maximum amount permitted to the most-favored state-chartered banks in the state in which they are operating. It provides in relevant part:

## B.  TILA

Plaintiffs Borchers and Edwards claim that PNC violated its duty under TILA to disclose the fact that additional finance charges would be assessed due to the payment holidays, as well as the amount of such charges. Begala made this very argument in his first lawsuit. The district court dismissed it for failure to state a claim, and we affirmed. *See Begala I*, 163 F.3d at 951-2. The only basis that plaintiffs advance for distinguishing this action from the first lawsuit is an allegation in which named-plaintiff Borchers claims that PNC granted him a payment holiday on one occasion without his authorization. Plaintiffs contend that this factual difference brings the current action within the scope of *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995), a case which we distinguished but nevertheless spoke approvingly of in affirming the dismissal of *Begala I*. Specifically, we said of *Travis*:

> In that case, the bank, without proper authorization, procured insurance against Travis's default and then charged Travis for the premium payments. Faced with a scenario in which the principal amount of a consumer's indebtedness was unilaterally increased by the lender, the district court correctly concluded that the insurance purchase "and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction."

*Begala I*, 163 F.3d at 951 n.1.

Plaintiffs make much of the fact that PNC's alleged actions, like those of the bank in *Travis*, were unilateral. That, however, is not the basis on which we distinguished *Travis*. We held in *Begala I* that payment deferrals cannot be construed as new credit transactions, and *Travis* was distinguishable because the bank in that case had increased the principal amount of the plaintiff's indebtedness. *See id.* In this case, there is no allegation that the principal amount of

the loans increased and, accordingly, no basis for distinguishing the present case from *Begala I.* Thus, the district court properly dismissed plaintiffs' TILA claims.

## C.  RICO

Plaintiffs contend that PNC bank working in concert with its affiliated agencies and others have violated federal law by granting payment holidays and then collecting the additional interest and fees from unsuspecting debtors. Specifically, the ninth claim for relief in plaintiffs' complaint reads in pertinent part:

At all times relevant to this Complaint, Defendant PNC Bank, Ohio, N.A., in conjunction with The Central Trust Company, National Association, The Central Bancorporation, Inc., PNC Financial Corp., New Financial Corp., PNC Bank Corp., various affiliated entities, agencies, accountants, legal counsel, dealers, and John Doe(s) (hereinafter the "Enterprise"), was an association-in-fact "enterprise" as that term is defined in 28 U.S.C. § 1961(4), engaged in and affecting interstate commerce. The enterprise was and is engaged in legitimate banking activities, in addition to the pattern of racketeering activity and collection of unlawful debt described below. In addition to defendant, the other entities and persons comprising the enterprise facilitated the racketeering activity by, *inter alia*, creating and/or participating in the creation of, false, inaccurate, misleading, and deceptive representations and information concerning payment holidays, as alleged herein; communicating, and/or participating in the communication of, false, inaccurate, misleading, and deceptive representations and information concerning payment holidays, as alleged herein; disseminating and transmitting, and/or participating in the dissemination and transmission of, false, inaccurate, misleading, and deceptive payment holiday solicitation letters and other information related to payment holidays; demanding,

communicating, collecting, and/or attempting to collect fraudulent and unlawful charges related to payment holidays; and interfering with credit and other financial opportunities of customers who refused to pay charges related to or resulting from payment holidays.

Under RICO, an enterprise is prohibited from engaging in a coordinated effort to collect an unlawful debt. Specifically, the RICO statute provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Plaintiffs' complaint fails adequately to allege the existence of a RICO enterprise, although not entirely for the reasons cited by the district court. The district court held that the complaint had failed to allege an enterprise distinct from PNC because all of the entities listed in the complaint were subdivisions or agents of PNC. Under RICO, a corporation cannot be both the "enterprise" and the "person" conducting or participating in the affairs of that enterprise. *See, e.g., Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1489 (6th Cir. 1989). Under the "non-identity" or "distinctness" requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982).

It is not clear from the pleadings, however, that the "dealers" (to take one example) are subdivisions, agents or members of PNC, and to so conclude requires that an