**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0160n.06

**No. 09-4290**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Mar 17, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DEBORAH J. SHIELDS, et al. | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| UNUMPROVIDENT CORPORATION, et al. | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  SILER, MOORE, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge.  Individual Plaintiffs appeal the dismissal and summary judgment in favor of the Defendants as to various claims against their insurance provider, UnumProvident Corporation, and individual case managers.  The Plaintiffs allege that UnumProvident denied their benefits under ERISA § 502(a)(1)(B), and conducted a racketeering enterprise in violation of RICO.  The Plaintiffs also allege that individual case managers intentionally mismanaged their workers' compensation claims.  For the following reasons, we **AFFIRM.**

## I.  BACKGROUND

### A.  The Parties

There are six named Defendants in this action:  UnumProvident Corporation and two of its subsidiaries, Unum Life Insurance Company of America and First Unum Life Insurance Company of America (collectively, "Unum"); a former Unum subsidiary, Genex Services, Inc.; and two nurses,

Cynthia Rotermund and Jill Stenger. Unum is a disability insurer and administrator. Genex provides case management services in connection with long-term disability claims and workers' compensation claims. Rotermund is a registered nurse employed by Genex and assigned to case manage the injuries suffered by the Plaintiffs. Stenger is a registered nurse employed by Genex assigned to supervise Rotermund's case management.

Several individual Plaintiffs filed a complaint against various combinations of these six Defendants.[1] Each of the Plaintiffs was injured while working for The Longaberger Company, which is a self-insured employer governed by the Employee Retirement Income Security Act ("ERISA"). *See* Ohio Revised Code ("ORC") § 4123.35. These individual Plaintiffs were beneficiaries of insurance coverage issued by Unum to Longaberger. Their claims were monitored by Rotermund and Stenger at Genex. The Plaintiffs' claims arise out of the alleged denial, miscalculation, or mismanagement of their benefits.

In 2003, Rotermund authored a report regarding her management of Shields's injuries. In her report, she stated that she focused her "treatment plan on returning the claimant to work and limiting unnecessary medical treatment." After listing the various cost savings "associated with the elimination of unnecessary treatment," she reported a total cost savings of "at least $14,550.00" on Shields's claim.

---

[1] The original Plaintiffs included Shields, Chapman, Corder, Aronhal, McCormick, David, Rodriguez-Medina, Puleio, O'Har, Kilmartin, LeBlanc, Gittleman, and Gartek Technologies. The parties settled the individual claims of Corder, Rodriguez-Medina, Puleio, O'Har, Kilmartin, and LeBlanc.

Based on this report, the individuals who would later become Plaintiffs in this action filed complaints with the Commission for Case Manager Certification ("CCMC"), a non-governmental organization unaffiliated with the Ohio workers' compensation system. The CCMC determined that Rotermund's report "[gave] the appearance that she practiced outside her scope of practice and exerted undue influence upon the outcome of case management services." It also determined that Rotermund violated several guidelines of the Code of Professional Conduct for Case Managers. It imposed continuing education classes and other remedial requirements, and filed its findings with the Ohio Board of Nursing. Rotermund later signed a consent agreement with the Ohio Board of Nursing suspending her license for eight months.

In 2005, five months after Rotermund signed the consent agreement, the Plaintiffs filed this lawsuit.

## B. Procedural Background

There are three counts of the complaint at issue on appeal. In Count One, the Plaintiffs seek review under ERISA § 502(a)(1)(B) of claim administrators' determinations denying benefits under their employee benefits plans. In Count Three, individual Plaintiffs claim that Rotermund and Stenger, along with Genex, "negligently, recklessly, maliciously and intentionally mismanaged" the diagnosis and treatment of their injuries. Finally, Count Four accuses Unum of operating an enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), with an underlying purpose to "pervert the nation's dominant disability insurance operation, enabling it to improperly reduce its reserves and increase its profits by engaging in two massive and illegal conspiracies." These conspiracies include "institutionalized bad faith claim handling" and "the use

of phantom or bogus trusts to avoid governmental oversight and regulation." As remedies to these claims, the Plaintiffs seek recovery of disability benefits, compensatory and punitive damages, injunctive relief under ERISA § (a)(2)-(3), treble damages under RICO, and attorney's fees.

The Unum Defendants moved to dismiss a portion of the Plaintiffs' complaint on various grounds. Rotermund and Stenger likewise moved to dismiss Count Three. Following two amendments to the complaint, the district court granted both motions. First, it dismissed the Plaintiffs' request for injunctive relief based on ERISA § 502(a)(3), because the alleged violations would be adequately remedied under ERISA § 502(a)(1)(B). The court also dismissed Count Three, because (1) Rotermund and Stenger have statutory immunity under the Ohio workers' compensation system; (2) the nurses had no legal obligation to Plaintiffs; and (3) the statute of limitations barred Plaintiffs' intentional tort claim. Finally, the court dismissed the RICO claims in Count Four, because under the McCarran-Ferguson Act, the application of RICO to the alleged conduct would impair the administrative scheme established by the Ohio legislature.

The parties then engaged in settlement negotiations, settling some of the individual ERISA claims in Count One.[2] Following settlement negotiations and the district court's granting of the motions to dismiss, only Count One of the complaint remained. As to Count One, only Plaintiffs Shields, Aronhalt, Chapman, McCormick, and Davis remained. These individual Plaintiffs continued to allege unpaid benefits under ERISA § 502(a)(1)(B).

---

[2] The parties settled the ERISA § 502(a)(1)(B) claims of Puleio, Rodriguez-Medina, O'Har, Corder, LeBlanc, and Kilmartin.

The Unum Defendants then moved for judgment as a matter of law on each of these remaining claims. Namely, the Unum Defendants moved for judgment against (1) Shields, because Unum's denial of her continued benefits was proper; and (2) Aronhalt, Chapman, McCormick, and Davis, because they failed to exhaust their administrative remedies. The district court agreed that Unum's decision regarding Shields was not arbitrary or capricious. It also granted Unum's motion as to the remaining four Plaintiffs, as they failed to exhaust administrative remedies.

Plaintiffs appeal the judgment in favor of the Unum Defendants as to the ERISA claims in Count One, the dismissal of the claims against Rotermund and Stenger in Count Three, and the dismissal of their RICO allegations in Count Four.

## II.

### A. ERISA

We review a district court's decision on a motion for judgment as a matter of law de novo. *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006).

"[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim." *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 717-22 (6th Cir. 2005). The exhaustion requirement applies to claims alleging miscalculation of benefits. *See, e.g.*, *Bolvin v. U.S. Airways, Inc.*, 446 F.3d 148, 158 (D.C. Cir. 2006) (analyzing a challenge to benefit calculations and holding that "plaintiffs must exhaust administrative remedies before they may seek judicial intervention.").

There is a general exception to the exhaustion requirement "when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so

certain as to make exhaustion futile." *Hill*, 409 F.3d at 718-719. To avoid the exhaustion requirement, the plaintiff must make a "clear and positive indication" of futility. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998).

In Count One of the complaint, the Plaintiffs[3] allege that their disability claims "were denied and terminated wrongfully, in bad faith and in violation of [Unum] Defendants' fiduciary obligations under ERISA § 502(a)(1)(B)." They appear to have modified this claim during the district court proceedings, and now allege a miscalculation of the benefits they currently receive from Unum. They conceded to the district court that they did not exhaust their administrative remedies, but argued that the administrative process would be futile.

The remaining Plaintiffs do not dispute that they currently receive disability benefits from Unum, so they cannot claim wrongful denial or termination, as the claim is stated in the complaint. As for the alleged miscalculation of benefits, the Plaintiffs have failed to exhaust their administrative remedies. *See Hill*, 409 F.3d at 717. The Plaintiffs' respective Unum plan documents outline specific and mandatory procedures for filing claims and appealing claims determinations.[4] The Plaintiffs also fail to substantiate their conclusory argument that recalculation of benefits cannot be achieved through Unum's administrative appeal process. Indeed, other cases suggest that the

---

[3] The remaining Plaintiffs on appeal include Aronhalt, Chapman, McCormick, and Davis. The Plaintiffs do not appear to appeal the determination regarding Shields, although they mention her in their discussion about exhaustion of administrative remedies.

[4] The plan documents in the administrative record detail the claims process, including the "Appeal Procedures," and state that "[u]nless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim."

administrative appeal process is the proper forum for recalculation of benefits. *See, e.g.*, *Bolvin*, 446 F.3d at 157.

Finally, the Plaintiffs fail to argue futility on appeal, much less show that an adverse administrative decision is "certain." *See Fallick*, 162 F.3d at 419. There is no evidence that Unum has refused to recalculate benefits or supply information regarding the calculation of benefits. *See Hill*, 409 F.3d at 722 ("Plaintiffs have not alleged . . . that if they utilized the administrative-review procedures . . . [the company] would not conduct further review of their individual claims.").

## B. RICO

We review de novo the district court's dismissal of a suit under Federal Rule of Civil Procedure 12(b)(6). *Riverview Health Inst. v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

In Count Four, the Plaintiffs allege that Unum operates a racketeering enterprise "through Genex and its various other subsidiaries, affiliates, wholly owned companies, customers, policy holders, claimants, independent contractors, and governmental and non-governmental regulators." They allege the underlying purpose of this enterprise is to "pervert the nation's dominant disability insurance operation," enabling it to engage in "two massive and illegal conspiracies." These conspiracies include the "Bad Faith Scheme," which institutionalizes bad faith claims handling, and the "Bogus Trust Scheme," which uses phantom or bogus trusts to avoid governmental oversight and regulation and enable improper changes in coverage and policy terms.

The district court dismissed the claim, finding the Plaintiffs' RICO action in Ohio was preempted by the McCarran-Ferguson Act. On appeal, the Unum Defendants also argue that the Plaintiffs fail to state a RICO claim. This issue was not raised before the district court, but we may

affirm on any ground supported by the record. *See Hunt v. Sycamore Comm. Sch.*, 542 F.3d 529, 535 n.2 (6th Cir. 2008).

To state an 18 U.S.C. § 1962(c) claim of racketeering activity under RICO, the plaintiff must plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). An enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association in fact" enterprise requires "an ongoing organization, formal or informal," with the various associates functioning as a "continuing unit." *Turkette*, 452 U.S. at 583. A "properly pled RICO claim must cogently allege activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993).

In interpreting RICO, courts have applied a "distinctness" requirement, which requires the "person" charged with violating RICO be a separate entity from the "enterprise." *See Begala v. PNC Bank, Ohio*, 214 F.3d 776, 781 (6th Cir. 2000). Under this requirement, a corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. *Id.* at 781. Thus, "[a]n organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Id.*

The Plaintiffs fail to adequately plead the existence of an "association in fact" RICO enterprise. *See id.* In their complaint, the Plaintiffs identify Unum as the "person," with an "enterprise" consisting of "[Unum's] various subsidiaries, affiliates, wholly owned companies, customers, policy holders, claimants, independent contractors, and governmental and non-governmental regulators." As in *Begala*, "the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages." *Id.* The complaint is devoid of facts suggesting that the behavior of the listed entities is "coordinated in such a way that they function as a continuing unit." *See id.* Rather, the Plaintiffs' allegations appear to relate only to *Unum's* alleged bad faith claim handling. Yet a corporation cannot become an enterprise distinct from itself for RICO purposes. *See id.* Accordingly, the Plaintiffs fail to state a RICO claim.

Because their pleadings fail to state a RICO claim, we need not decide the preemption issue.

## C. Intentional Tort

We review de novo the district court's dismissal of a suit under Federal Rule of Civil Procedure 12(b)(6). *Riverview*, 601 F.3d at 512. In Count Three, the Plaintiffs[5] allege that Rotermund "committed an intentional tort consisting of holding herself out as a registered nurse case manager, and for financial gain, intentionally precluding [Plaintiffs] from obtaining proper and timely medical diagnostic services and treatment." Rotermund and Stenger respond that nurses who manage claims are not the proper defendants for intentional tort liability. Alternatively, they contend

---

[5] The remaining Plaintiffs in Count Three include Shields, Chapman, Aronhalt, McCormick, and Davis.

that the Plaintiffs' claim is barred by the two-year statute of limitations for intentional torts, and that they cannot avail themselves of the four-year statute of limitations for fraud because they fail to adequately plead fraud.

Ohio provides a two-year statute of limitations for intentional tort claims. ORC § 2305.10. It provides a four-year statute of limitations for claims based on fraud. ORC § 2305.09. The five elements of fraud in Ohio include (1) false representation of a material fact; (2) knowledge of or belief in its falsity by the person making it; (3) belief in its truth by the person to whom it is made; (4) intent that it should be acted upon; and (5) detrimental reliance upon it by the person claiming to have been deceived." *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 819 (N.D. Ohio 2004).

In Count Three, the Plaintiffs allege that Rotermund and Stenger "negligently, recklessly, maliciously and intentionally mismanaged and abused the Ohio Plaintiffs in managing the diagnosis and treatment of their injuries." Their original complaint was filed August 5, 2005, and their allegations relate to the report authored by Rotermund. They attach to their complaint the CCMC decision determining that Rotermund violated three case management ethics guidelines. One of these three guidelines is Guideline G20(b), which states: "Unprofessional Behavior. It is unprofessional behavior if the [case manager] engages in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Plaintiffs urge that Count Three, in conjunction with the CCMC attachment, pleads "intentional and fraudulent torts" that are governed by Ohio's four-year statute of limitations for fraud, rather than the two-year statute of limitations for intentional torts.

No. 09-4290
*Shields et al. v. UnumProvident et al.*

The Plaintiffs' "intentional mismanagement" tort claim plainly involves the two-year statute of frauds. *See* ORC § 2305.10. The Plaintiffs fail to plead the necessary elements of fraud that would avail them of the four-year statute of limitations. *See Meridia*, 328 F. Supp. 2d at 819. Simply because the CCMC decision includes the word "fraud" does not mean that the Plaintiffs have pleaded the requisite elements. The Plaintiffs do not allege that the information in Rotermund's report is false, or that the claimants justifiably relied on the report to their detriment. *See Meridia*, 328 F. Supp. 2d at 819. Instead, they allege that Rotermund "trumpeted" the cost savings in her report, and "intentionally mismanaged" claims "by discouraging or refusing to authorize appropriate diagnostic tests, misdirecting treatment and virtually forcing a premature return to work at an inappropriate job." These allegations, to the extent they state a claim, plead an intentional tort. Count Three is therefore barred by the two-year statute of limitations. *See* ORC § 2305.10.

**AFFIRMED**.