NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0878n.06

No. 14-3395

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MINDY WYMER, individually and/or as parent/next friend of John Does 1-4, minors; WILLIAM WYMER, individually and/or as parent/next friend of John Does 2-4, minors, | ) ) ) ) ) | **FILED** <br> Nov 21, 2014 <br> DEBORAH S. HUNT, Clerk |
|     Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| RICHLAND COUNTY CHILDREN SERVICES, Richland County, Ohio; RANDY PARKER; NIKKI HARLESS; MARSHA COLEMAN; MICHAEL BRENDEMUEHL; HOLLY HARTMAN; ALICE RAMSAY, | ) ) ) ) ) ) ) | |
|     Defendants-Appellees. | ) ) | |

Before: McKEAGUE and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.[*]

KETHLEDGE, Circuit Judge. Mindy and William Wymer sued the Richland County Children Services ("Richland") and several of Richland's employees under 42 U.S.C. § 1983, claiming that the defendants unconstitutionally restricted their parental rights. The Wymers also brought several state-law claims. The district court dismissed the Wymers' complaint for failure to state a claim. We affirm.

---

[*] The Honorable William O. Bertelsman, Senior District Judge for the Eastern District of Kentucky, sitting by designation.

We recite the facts as if all the allegations in the Wymers' complaint are true. *See Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014). Mindy and William Wymer are married with four children, three of whom they adopted through Richland. Mindy also worked for Richland, beginning in May 2010. But her tenure there was troubled: many of her colleagues disliked her, her supervisor "harassed and humiliated her[,]" and the Executive Director, Randy Parker, told other employees that she was "difficult to work with." Mindy resigned in May 2011.

In December 2011, the Wymers took their son, John Doe 4, to the emergency room with a fever and chest pain. Doctors determined that the child had fractured his breastbone. The child himself said he had gotten hurt when he jumped off the couch. Later, a Richland social worker, Michael Brendemuehl, visited the Wymer home to investigate John Doe 4's injuries. Two of the Wymers' other children confirmed John Doe 4's story. Brendemuehl told the Wymers that he did not think John Doe 4 had been abused.

That same night, however, Brendemuehl (accompanied by police officers) returned to the Wymer home and removed all four children. The next day, Brendemuehl filed a complaint against the Wymers in the Juvenile Court, falsely alleging that the Wymers abused one of their other children, John Doe 1. The court held a hearing about the complaint that same day, during which defendants Hartman and Ramsay presented "false information" to the court about the Wymers. The Wymers themselves were not allowed to attend the hearing. The court ordered all four children into foster care for the weekend.

Later, the "defendants" offered to return the children to the Wymers' home if William moved out and had no contact with the children. Although William had no history of violence, he complied with Richland's conditions. The "defendants" thereafter asked prosecutors to file

criminal charges against William for his alleged abuse of John Doe 4. Police investigated, but found no evidence of abuse. One of the officers told the Wymers that Richland's demand that William leave the Wymer home "appeared to be a personal vendetta" against Mindy.

In January 2012, Richland agreed to dismiss the case involving John Doe 1 if William first completed a mental-health assessment with a therapist. William agreed. The therapist reported that Mindy and William appeared devoted to their children, and recommended that Richland allow William to return home. Later, Ramsay told the therapist that, unless the therapist changed his assessment of William, Richland would not refer business to the therapist in the future. Richland did not allow William to return home until weeks later.

In February, the Wymers filed a "grievance" with Richland complaining about how it handled their case. Richland never scheduled a hearing about the grievance or otherwise gave the Wymers an opportunity to be heard about their complaints. A Richland director eventually denied the grievance and the defendant Parker denied their appeal.

The Wymers later brought this lawsuit, asserting claims under 42 U.S.C. § 1983 and state law. The defendants moved to dismiss the complaint for failure to state a claim. The district court granted the motions, dismissed the Wymers' § 1983 claims with prejudice, and declined to exercise supplemental jurisdiction over the state-law claims.

We review a Rule 12(b)(6) dismissal de novo. *Bright*, 753 F.3d at 652. To state a claim, the complaint must allege sufficient facts that, taken as true, state a plausible claim for relief. *See id.*

The Wymers first argue that their complaint stated an equal-protection claim against the individual defendants. To state such a claim, however, the Wymers must allege that the defendants treated a similarly situated person better than they treated the Wymers. *See Ctr. for*

*Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379-80 (6th Cir. 2011). There is no such allegation here: the complaint has nothing to say about the existence of any similarly situated persons, much less how they were treated. Thus, the district court was correct to dismiss this claim.

The Wymers next argue that their complaint stated a due-process claim. But this claim—like the Wymers' arguments in support of it on appeal—is simply unintelligible. One does gather from the complaint and briefing that some of Richland's employees disliked Mindy Wymer and that Richland restricted the Wymers' parental rights over a period of several months. But child-services agencies impose those sorts of restrictions every day; and the Wymers otherwise do not recite the elements of a due-process claim, or identify the deprivations they wish to remedy, or explain the theory behind their claim. Instead, they merely offer conclusory assertions that the defendants' unspecified "policies," "actions," and "failures to act" violated their rights to "due process of laws." Thus, the district court was correct to dismiss this claim as well.

The Wymers also argue their complaint stated a so-called *Monell* claim against Richland itself, based upon its policies and alleged failure to train its employees. *See generally Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978). But that claim fails because the complaint otherwise does not state a claim that any of Richland's employees violated the Wymers' constitutional rights. *See Robertson v. Lucas*, 753 F.3d 606, 623 (6th Cir. 2014).

Finally, the Wymers argue that the district court abused its discretion by denying them leave to amend their complaint. But the Wymers never moved for leave to amend, or otherwise explained why they were entitled to that relief. Instead, in their brief in opposition to the defendants' motion to dismiss, the Wymers merely asked for a chance to amend their complaint

if the court granted the defendants' motion. The district court was not obligated to grant that perfunctory request. *See Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 783-84 (6th Cir. 2000). If the Wymers wish to pursue this litigation further, they must do so in state court, by asserting—in more intelligible fashion—the state-law claims over which the district court declined jurisdiction here.

The district court's judgment is affirmed.