NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0247n.06
No. 21-5848

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 17, 2022
DEBORAH S. HUNT, Clerk

LORING EDWIN JUSTICE, individually;
LORING EDWIN JUSTICE, as Next Friend
to N.N./N.J., a minor,

    Plaintiffs-Appellants,

v.

CECILIA S. PETERSEN; PETERSEN &
HIGGINS,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
TENNESSEE

OPINION

Before: GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Plaintiff-Appellant Loring Edwin Justice appeals

the district court's grant of a motion to dismiss for failure to state a claim against Defendant-

Appellee Cecilia S. Petersen and her law firm, Defendant-Appellee Petersen & Higgins

(collectively, "Appellees").  Justice's sole claim on appeal is that the district court abused its

discretion by dismissing his federal claims with prejudice without first giving him the opportunity

to amend his complaint.  Because Justice did not file a motion to amend or a proposed amendment,

we AFFIRM.

**I.**

This appeal arises from a protracted custody dispute.  Justice and Kim Nelson had a child

together. *Nelson v. Justice*, No. E2017-00895-COA-R3-CV, 2019 WL 337040, at *1 (Tenn. Ct.

App. Jan. 25, 2019), *overruled in part on other grounds by In re Mattie L.*, 618 S.W.3d 335

(Tenn. 2021).[1]  Before the child was born, Nelson filed a complaint against Justice in Tennessee state court to establish paternity and obtain child support, birthing expenses, attorneys' fees, and a temporary restraining order.  *Id.*  The trial court entered a temporary restraining order and a modified order, which set a schedule for parenting time.  *Id.*  The case remained dormant for several years, during which time, the parties followed the parenting schedule set by the modified temporary restraining order.  *Id.*

Eventually, the case went to trial.  *Id.* at *3.  Following a twenty-two-day trial over the course of nearly two years, the state trial court designated Nelson as the primary residential parent and entered a parenting schedule limiting Justice's parenting time, ordering Justice to pay child support, and awarding Nelson attorneys' fees.[2]  *Id.* at *3, *10–11.  The Tennessee Court of Appeals affirmed and remanded the case for a determination of Nelson's attorneys' fees incurred on appeal.  *Id.* at *28.

On January 23–24, 2020, the state trial court held a hearing on appellate attorneys' fees.  Justice appealed the trial court's award of appellate attorneys' fees, and the Tennessee Court of Appeals modified the trial court's award.  *Nelson v. Justice*, No. E2020-01172-COA-R3-CV, 2022 WL 202636, at *1 (Tenn. Ct. App. Jan. 24, 2022).  Appellees represented Nelson in the appeal of the state-court action and in the post-appeal proceedings.

On January 25, 2021, Justice brought this action against Appellees in the United States District Court for the Eastern District of Tennessee, alleging state-law torts and that Appellees

---

[1] We may take judicial notice of other courts' proceedings.  *Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020).

[2] Justice filed a federal lawsuit against Nelson and her trial counsel in the United States District Court for the Eastern District of Tennessee.  *Justice v. Meares*, No. 3:19-CV-185, 2021 WL 3410045, at *2 (E.D. Tenn. Aug. 4, 2021).  The district court granted Nelson's motion for judgment on the pleadings.  *Id.* at *16.  Justice appealed that decision, and this court dismissed his appeal as untimely.  *Justice v. Nelson*, No. 21-5844, ECF No. 27.

violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*

The complaint, which spans eighty-one pages, alleges eight counts: (1) extortion, attempted extortion, and conspiracy to commit extortion; (2) intentional infliction of emotional distress; (3) conspiracy to defraud; (4) coercion; (5) abuse of process and conspiracy to abuse process; (6) fraud and conspiracy to commit fraud; (7) blackmail and conspiracy to commit blackmail; and (8) civil violations of RICO. Factually, Justice alleges that Petersen filed false, duplicative, and fraudulent submissions for attorneys' fees; testified falsely at the hearing on appellate attorneys' fees in the state trial court; attempted to bill Justice for clerical activities or manual labor; and sought to bill Justice for a court appearance that never occurred.[3] He seeks compensatory damages of $2 million and punitive damages of $6 million.

On February 5, 2021, the district court entered an "Order Governing Motions to Dismiss." The order states in part:

> A motion pursuant to Federal Rule of Civil Procedure 12(b) is discouraged if the defect is likely to be cured by filing an amended pleading. Therefore, the parties must meet and confer prior to the filing of a motion to dismiss to determine whether it can be avoided. The duty to confer also applies to parties appearing *pro se*. Consequently, a motion to dismiss must be accompanied by a notice indicating that the parties have conferred to determine whether an amendment could cure a deficient pleading, and have been unable to agree that the pleading is curable by a permissible amendment.
>
> MOTIONS TO DISMISS THAT DO NOT CONTAIN THE REQUIRED CERTIFICATION ARE SUBJECT TO BEING STRICKEN ON THE COURT'S MOTION.

R. 5, PID 94. On May 20, 2021, and June 2, 2021, Petersen's counsel wrote to Justice's counsel to schedule a meeting to discuss alleged deficiencies in Justice's complaint. Petersen's counsel

---

[3] The complaint also makes numerous allegations against Nelson's trial attorneys—David Valone, Martha Meares, and Paul Dillard—who are not named defendants. Justice alleges, among other things, that during settlement negotiations, Nelson's trial counsel coerced him by "offer[ing] to sell unsupervised co-parenting time" for $400,000. R. 1, PID 16 (emphasis omitted).

also called Justice's counsel on June 2, but Justice's counsel's voicemail was not accepting new messages. Justice's counsel did not respond to the requests to meet and confer.

On June 7, 2021, Appellees filed a motion to dismiss for failure to state a claim, and a notice indicating that Justice's counsel had not responded to the attempts to meet. Justice did not amend his complaint as a matter of course within twenty-one days of the filing of the motion to dismiss as permitted under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. Instead, Justice filed an opposition to the motion, in which he addressed the merits of Appellees' motion, and stated that "[e]ven were there a pleading failure in Plaintiff's Complaint, the remedy for any failing in this respect would be amendment, not dismissal, at this early stage." R. 17, PID 201. Justice did not explain how he would amend the complaint if given the opportunity to do so.

The district court dismissed Justice's federal claims with prejudice and his state-law claims without prejudice, declining to exercise supplemental jurisdiction over the latter. The district court concluded that although the *Rooker-Feldman* doctrine did not bar Justice's claims, Justice failed to state a civil RICO claim under 18 U.S.C. §§ 1962(c) or (d). Relying on other district court cases, the district court reasoned in part that the provision of traditional legal services does not constitute the operation or management of an enterprise under RICO.

The district court rejected Justice's suggestion that amendment, rather than dismissal, was appropriate, reasoning that Justice had not filed a motion to amend, R. 19, PID 235 n.5 (citing Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.")); did not "attach[] a copy of the proposed amended pleading to the motion," which "may be grounds for denial of the motion," *id.* (quoting E.D. Tenn. L.R. 15.1)); and failed to "identif[y] how he would amend his [c]omplaint [or] demonstrate[] why amendment would not be futile," *id.*

Justice appealed, raising as his sole issue that the trial court should have granted him an opportunity to amend his complaint.

## II.

We review for abuse of discretion a district court's refusal to grant a plaintiff leave to amend a complaint. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008).

Although the Federal Rules of Civil Procedure provide that a court should grant a plaintiff leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "the right to amend is not absolute or automatic," *Tucker*, 539 F.3d at 551. Where a plaintiff fails to file a motion to amend or a proposed amendment indicating how the plaintiff would amend the complaint, a district court does not abuse its discretion by denying the plaintiff leave to amend. *See, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627–28 (6th Cir. 2019); *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017); *Tucker*, 539 F.3d at 551–52; *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003) (concluding that, because no motion for leave to amend was filed and no proposed amendment was submitted, the plaintiffs "failed to exercise the due diligence required to take advantage of Rule 15(a)'s dictate that leave to amend shall be freely granted" (internal quotation marks omitted)). We have explained that "[w]ithout viewing [a] proposed amendment, it [is] impossible for the district court to determine whether leave to amend should have been granted." *Spadafore*, 330 F.3d at 853. And, district courts are not "'required to engage in a guessing game' as to what [the plaintiff] might plead to save her claim." *Tucker*, 539 F.3d at 552 (quoting *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002)).

A "bare request" for amendment in an opposition to a motion to dismiss does not constitute a motion to amend. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (citing

*Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)). In *Crosby*, we affirmed the

district court's denial of leave to file a second amended complaint, reasoning:

> Plaintiffs never moved for leave to file a second amended complaint. Nor did they file a proposed second amended complaint. Instead, Plaintiffs included only a cursory request at the end of their opposition to Defendants' motion to dismiss: "If this Court should find that any of Plaintiffs['] claims are lacking, Plaintiffs respectfully request[] this Court grant leave for Plaintiffs to amend the complaint and this leave should be freely given." Plaintiffs also failed to explain how a second amended complaint would resolve the problems in the first amended complaint. Thus, the district court did not abuse its discretion by dismissing the amended complaint with prejudice.

*Id.* at 628 (citation omitted). Similarly, in *Begala*, the plaintiffs requested, in their opposition to

the motions to dismiss, that the district court permit them to amend their complaint if it was

deficient. 214 F.3d at 783. We affirmed the district court's denial of leave to amend, reasoning

in part that "[w]hat plaintiffs may have stated, almost as an aside, to the district court in a

memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend."

*Id.* at 784.

Here, Justice did not file a motion to amend or a proposed amended pleading. And,

Justice's opposition to the motion to dismiss did not explain how he would amend the complaint;

it merely stated in passing that "the remedy for any [deficiencies in the complaint] would be

amendment, not dismissal, at this early stage." R. 17, PID 201. Because the district court "was

not required to engage in a guessing game" regarding how he might amend the complaint, *see*

*Tucker*, 539 F.3d at 552 (quoting *Meehan*, 312 F.3d at 914), the district court did not abuse its

discretion in granting Appellees' motion to dismiss with prejudice.[4]

---

[4] We further note that Justice does not explain in his brief on appeal how he would have amended his complaint.

Justice relies on our decision in *United States ex rel. Bledsoe v. Community Health System*, 342 F.3d 634 (6th Cir. 2003). In *Bledsoe*, the relator brought a *qui tam* action against healthcare providers, alleging violations of the False Claims Act (FCA). *Id.* at 636. The district court granted the defendants' motion for judgment on the pleadings and dismissed the relator's claims with prejudice. *Id.* Although the relator had not filed a motion to amend, this court held that the district court abused its discretion in dismissing the relator's amended complaint with prejudice. *Id.* at 644. We reasoned that the relator was not on sufficient notice that his amended complaint was deficient because the district court's order dismissing the complaint was its "first communication to [the relator] that (1) he was required to satisfy Rule 9(b) and (2) he failed to satisfy it." *Id.* We further explained that "[a]t the time [the relator] had filed his original and amended complaints, the law was unsettled as to whether a complaint alleging FCA violations needed to comply with Rule 9(b), and [the relator] therefore was not definitively on notice that he had to state his allegations with the specificity required by Rule 9(b)." *Id.* at 645.

Appellees respond that *Bledsoe* is distinguishable because it was decided before the 2009 amendment to Rule 15 of the Federal Rules of Civil Procedure, which enabled plaintiffs to file an amended complaint as a matter of course within twenty-one days of a Rule 12(b) motion. Thus, Appellees argue, "[u]nlike the *Bledsoe* plaintiff, Justice *did* have an opportunity to amend his complaint" as a matter of course, but failed to do so. Appellees' Br. at 10.

*Bledsoe* is distinguishable for a more basic reason. In *Ohio Police & Fire Pension Fund v. Standard & Poor's Financial Services LLC*, 700 F.3d 829 (6th Cir. 2012), we affirmed the district court's dismissal of a complaint with prejudice because the plaintiffs did not seek leave to

amend or file a proposed amended complaint in the district court. *See id.* at 844. We distinguished

*Bledsoe*, reasoning:

> *Bledsoe* was an unusual case because the district court's final order gave plaintiff notice, for the first time, that a heightened pleading standard applied to his claims. [342 F.3d at 644–45.] There was no evidence in the record of "undue delay, bad faith or dilatory motive" on the plaintiff's part, and the plaintiff's disclosures to the government prior to filing his *qui tam* suit showed that he could meet the heightened pleading standard. *Id.* By contrast, in this case, there are no extenuating circumstances justifying a departure from the principle that "it is not the district court's role to initiate amendments." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008).

*Ohio Police & Fire*, 700 F.3d at 844. Here, Justice has not pointed to any "extenuating circumstances," failed to file a motion to amend, and gave the court no reason to believe that amendment would not be futile. Thus, *Bledsoe* is distinguishable for the same reasons it was in *Ohio Police & Fire*.

## III.

For the foregoing reasons, we AFFIRM the district court's judgment.